Max DEAN et al., Plaintiffs-Appellants,

v.

Richard AUSTIN et al.,
Defendants-Appellees.

No. 78–1491.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1979.

Decided July 16, 1979.

---

Timothy Mullins, Southfield, Mich., James F. Schoener, Washington, D. C., Max Dean, Flint, Mich., for plaintiffs-appellants.

Frank J. Kelley, Atty. Gen. of Mich., Michael C. Levine, Asst. Atty. Gen., Robert A. Derengoski, Sol. Gen., Jann Ryan Baugh, Asst. Atty. Gen., Lansing, Mich., for defendants-appellees.

Before EDWARDS, Chief Judge, CELEBREZZE, Circuit Judge, and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

Appellants Dean et al., as representatives of the U.S. Labor Party in Michigan, brought this action against the Michigan Secretary of State, seeking a preliminary injunction requiring Austin to put the U.S. Labor Party candidates on the November, 1978 ballot. After hearing, the preliminary injunction was denied by the District Judge.[1] Of course, the election has long since been held and under normal standards since the relief sought is now impossible, this case would be moot.

Dean argues, however, that this case is one of the exceptions to the mootness rule because it was impossible in 1978 (and will be in future elections) to secure adequate review, particularly at the appellate level, of the claimed constitutional denials involved here. Thus this case might be said to belong in the category of cases which repetitively present constitutional issues which are of a class "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).

The major answer to this appeal is found in *Hudler v. Austin*, 419 F.Supp. 1002 (E.D.Mich.), *summarily aff'd* 430 U.S. 924, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1976), in which a divided three-judge court rejected a federal constitutional attack upon 1976 Mich.Pub.Act 94 (M.C.L.A. § 168.685 and §§ 168.560a and 168.560b) and denied relief, and the Supreme Court subsequently sum-

---

1. By a stipulation dated October 9, 1978, both parties agree that the District Court opinion denying preliminary injunction is to be treated as a final order "adjudicating the controlling questions of law involved in this matter."

marily affirmed, 430 U.S. 924, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1976) (with three justices voting to hear the case on the merits). This court, of course, has no power to rehear the constitutionality of Public Act 94.

If there is a new issue not precluded from our review by the Supreme Court affirmance just referred to, it is that the procedures for implementing Public Act 94 in the 1978 election were unconstitutional in their impact upon the legislative scheme. Examination of the evidence presented at the three-day hearing before the District Judge strongly suggests that many voters lost their ballots by their mistakes. The sample ballots which were introduced to illustrate how Public Act 94 had been implemented in 1978 were at least confusing. Appellants argue that when applied to the provisions of Public Act 94 the instructions constitute constitutional error under the "strict scrutiny" standard established by Supreme Court decisions. See *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979).

The appellants reinforce their claims by citing the high percentage of voided ballots among the ballots which had been cast at the primary for placing their party on the new election ballot:

Plaintiffs obtained retabulations of the U.S. Labor Party vote in three election districts: the absentee vote for Detroit, 15% of the vote in Kent County, and 15% of the vote in Genessee County. George Hersteck, an employee for the Michigan State Election Division, testified to these results:

Out of 27,877 absentee ballots cast for the City of Detroit, 609 votes were cast for the U.S. Labor Party. One was officially counted, 608 votes were rejected. In the Kent County sample of 6,803 votes, 70 people voted for the U.S. Labor Party. 6 votes were officially counted, 64 votes were rejected. In the Genessee County sample of 10,357 votes, 498 people voted for the U.S. Labor Party. 8 votes were officially counted, 490 were rejected.

This means that 1160 of 1175 votes were rejected, almost 99 percent.

■ Clearly the Michigan Secretary of State has no duty to conduct a campaign to convince Michigan voters that the U.S. Labor Party should have a place on the ballot. Nor can he and his election aides prevent all voter errors. On the other hand, the official instructions to voters should contain as clear and understandable warnings as possible so that persons desirous of casting a vote for a minority party to have a place on the ballot could do so without excessive risk of a mistake causing disqualification of their ballots. The high percentage of disqualification in the 1978 election strongly suggests that the instructions were not easily understood. It appears that a specific warning in the Party Qualification Section of the ballot to the effect that the entire partisan ballot would be voided if a vote were cast there *and* in either major party column, might have served to mitigate the risk of voter mistake.

■ However, we do not reach the question of whether such a lack of warning constituted a constitutional deprivation because we find plaintiffs' suit moot and do not find that it meets the test for the exception to the mootness doctrine.

In *Illinois State Board of Elections, supra,* the Supreme Court stated the test for the exception as follows:

In *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975), we elaborated on this exception, holding that a case is not moot when:

"(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."

99 S.Ct. at 992.

In distinguishing the case before it from *Weinstein* and *Southern Pacific* the Supreme Court said:

Although the first branch of the test is satisfied here, appellant has presented no evidence creating a reasonable expectation that the Chicago Board will repeat its purportedly unauthorized actions in

subsequent elections. Appellant's conclusory assertions that the actions are capable of repetition are not sufficient to satisfy the *Weinstein* test, particularly since appellant does not contend that the Chicago Board has ever attempted previously to conclude litigation without its approval.

*Id.*

Similarly we do not believe that here plaintiffs have offered any evidence which would create a reasonable expectation that the U.S. Labor Party will be subjected to the same actions again. We note that plaintiffs do not challenge the good faith of defendants nor do they allege that defendants intended to discriminate against them, either of which might create such a reasonable expectation of repetition.

Briefly put, what we hold here is that Michigan election officials may have made mistakes in the instructions pertaining to Public Act 94 in the 1978 election but that there is no reason to believe from this record that any inadequacy of the ballot instructions in 1978 will be repeated in future elections. Therefore, finding the present appeal moot, we order it dismissed.