856 F.2d 783
 MICHIGAN STATE CHAMBER OF COMMERCE, a non-profit Michigan
corporation, Plaintiff-Appellant,
v.
Richard H. AUSTIN, Michigan Secretary of State; and Frank
J. Kelley, Michigan Attorney General, Defendants-Appellees.
 No. 86-1867.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 14, 1987.
Decided Sept. 15, 1988.
Rehearing and Rehearing En Banc Denied Dec. 14, 1988.
 
 Richard D. McLellan, William J. Perrone, Dykema, Gossett, Spencer, Goodnow & Trigg, Lansing, Mich., Joel M. Boyden (argued), Dykema, Gossett Spencer Goodnow & Trigg, Grand Rapids, Mich., for plaintiff-appellant.
 Frank J. Kelley, Atty. Gen., Richard P. Gartner, Asst. Atty. Gen. (argued), Lansing, Mich., for defendants-appellees.
 Michael Corcoran, Lansing, Mich., for Michigan Citizens Lobby.
 Theodore Sachs, Mark Brewer, Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C., Detroit, Mich., for Michigan Democratic Party.
 Before ENGEL, Chief Judge*, RYAN, Circuit Judge, and PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 This appeal concerns the constitutionality of Sec. 54(1) of the Michigan Campaign Finance Act under the first and fourteenth amendments to the United States Constitution, and article I of the Michigan Constitution. Section 54(1) severely restricts the ability of corporations to make indirect expenditures in support of or in opposition to the election of a candidate for Michigan office. Although directly infringing upon the first amendment free speech guarantees of corporations, Sec. 54(1) was upheld by the district court as a narrowly drawn regulation that serves the compelling state interest of preventing the threat or appearance of corruption. We conclude that indirect expenditures made by a nontraditional corporation, like the Michigan State Chamber of Commerce, formed for essentially ideological purposes and to disseminate economic and political ideas and not to amass capital, do not pose the threat or appearance of corruption. We hold that Sec. 54(1), as applied to the Chamber, is unconstitutional under the first amendment.
 
 I.
 
 2
 Plaintiff-appellant, the Michigan State Chamber of Commerce (the Chamber), is a nonprofit Michigan corporation funded by the annual dues which its corporate and noncorporate members are required to pay. The defendants-appellees are Richard H. Austin, the Michigan Secretary of State, and Frank J. Kelley, the Michigan Attorney General.
 
 
 3
 The Chamber is comprised of about eight thousand voluntary members, approximately seventy-five percent of whom are corporations. The Chamber characterizes itself as an ideological corporation formed to promote the common good and interests of the Michigan business community. The Chamber's objectives and purposes, as stated in its bylaws, include promoting conditions conducive to economic development, training and educating its members, encouraging the maintenance and observance of ethical business practices, and receiving expenditures and making contributions for political purposes.
 
 
 4
 In June of 1985, the Chamber sought to place a paid advertisement in the Grand Rapids Press in support of Richard Bandstra, the Republican nominee for the 93rd Legislative District for the Michigan House of Representatives. However, because Sec. 54(1) of the Michigan Campaign Finance Act (the Act), Mich.Comp.Laws Ann. (M.C.L.A.) Sec. 169.254(1) (1987 Supp.), appeared to prohibit the ad, the Chamber brought suit seeking declaratory and permanent injunctive relief allowing it to support political candidates through advertisements and other independent expenditures.[1]
 
 Section 54(1) of the Act provides that:
 
 5
 Except with respect to the exceptions and conditions in subsections (2) and (3) and section 55, and to loans made in the ordinary course of business, a corporation may not make a contribution or expenditure or provide volunteer personal services which services are excluded from the definition of a contribution pursuant to section 4(3)(a).
 
 
 6
 M.C.L.A. Sec. 169.254(1). The Act defines an "expenditure" as including:
 
 
 7
 A payment, donation, loan, pledge, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. An offer or tender of an expenditure is not an expenditure if expressly and unconditionally rejected or returned.
 
 
 8
 M.C.L.A. Sec. 169.206(1). An "independent expenditure" is defined as an expenditure:
 
 
 9
 [B]y a person if the expenditure is not made at the direction of, or under the control of, another person and if the expenditure is not a contribution to a committee.
 
 
 10
 M.C.L.A. Sec. 169.209(1).
 
 
 11
 The Act provides an exception to Sec. 54(1)'s ban on corporate independent expenditures through Sec. 55. M.C.L.A. Sec. 169.255 (1987 Supp.). This exception allows a corporation to make independent political expenditures if it establishes a separate segregated fund to be used solely for political purposes, a so-called "PAC." M.C.L.A. Sec. 169.255(1). Corporate solicitation of contributions to a segregated fund of this type is limited to statutorily specified persons.[2] The Chamber's proposed ad in the Grand Rapids Press falls squarely within the Act's definition of an "indirect expenditure." See M.C.L.A. Sec. 169.209(1), supra. The Chamber has established a segregated fund under the Sec. 55 exception, the Michigan State Chamber of Commerce Political Action Committee. However, it sought to make its indirect expenditure in support of Bandstra through the Chamber's general treasury funds.
 
 
 12
 The Chamber challenges the limitations Sec. 54(1) places on a corporation's freedom to make independent political expenditures as violative of the first and fourteenth amendments to the Constitution and article I, Secs. 2, 3, and 5 of the Michigan Constitution. First, the Chamber argues that Sec. 54(1) violates its freedom of speech as guaranteed by the first amendment and article I, Secs. 3 and 5 of the Michigan Constitution. Second, the Chamber argues that Sec. 54(1) violates the equal protection clauses of the fourteenth amendment and article I, Sec. 2 of the Michigan Constitution by distinguishing between corporate and noncorporate business entities. Third, the Chamber argues that the Act violates its equal protection guarantees by exempting members of the print and broadcast media from the limitations of Sec. 54(1). See M.C.L.A. Sec. 169.206(3)(d) (1987 Supp.).
 
 II.
 
 13
 Our analysis, like that of the district court, focuses only upon the Chamber's guarantees under the United States Constitution. The Michigan Supreme Court interprets the protections of article I, Secs. 2, 3, and 5 of the Michigan Constitution identically with the United States Constitution in the context of legislative restraints upon electoral activities. See Advisory Opinion on Constitutionality of 1975 P.A. 227, 396 Mich. 465, 484-85, 492-93, 242 N.W.2d 3, 9-10, 14 (1976).
 
 
 14
 We first examine the Chamber's first amendment challenge to Sec. 54(1). Where a government restricts the speech of a private person, including a corporation, the state action may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest. See Consolidated Edison Company v. Public Service Comm'n, 447 U.S. 530, 540, 100 S.Ct. 2326, 2334, 65 L.Ed.2d 319 (1980); First National Bank of Boston v. Bellotti, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978); Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976) (per curiam).
 
 
 15
 Citing the Supreme Court's holding in Buckley v. Valeo, supra, and Federal Election Comm'n v. National Conservative Political Action Committee, 470 U.S. 480, 496-97, 105 S.Ct. 1459, 1468-69, 84 L.Ed.2d 455 (1985), that "preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances," the district court upheld Sec. 54(1) based upon its determination that:
 
 
 16
 Section 54(1)'s prohibition of corporate independent expenditures in political elections serves the state's compelling interest in preventing corruption or the appearance of corruption in the electoral process.
 
 
 17
 Michigan State Chamber of Commerce v. Austin, 643 F.Supp. 397, 402 (W.D.Mich.1986). The court held that although there had been no finding of actual corruption, a finding of the threat or appearance of corruption was sufficient. Id. at 404. The court reasoned that a showing of the threat of corruption alone sufficed given the "great aggregations of capital and influence" and "faceless nature" of corporations, id. at 403, as well as the need for courts to not "second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared." Id. at 404 (citing Federal Election Comm'n v. National Right to Work Comm., 459 U.S. 197, 210, 103 S.Ct. 552, 561, 74 L.Ed.2d 364 (1982)).
 
 
 18
 In light of the Supreme Court's intervening decision in Federal Election Comm'n v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), it now appears that the district court defined the issue in this case too broadly. The district court held that the case presented the issue of whether a state "may prohibit corporations from making independent expenditures to influence elections for public office." Michigan State Chamber of Commerce, 642 F.Supp. at 403 (emphasis added). The Supreme Court has yet to specifically address the issue as stated by the district court. See Massachusetts Citizens for Life, 479 U.S. at 264, 107 S.Ct. at 631, 93 L.Ed.2d at 560; National Conservative Political Action Comm., 470 U.S. at 496, 105 S.Ct. at 1468; Bellotti, 435 U.S. at 788, n. 26, 98 S.Ct. at 1422, n. 26.
 
 
 19
 In Massachusetts Citizens for Life, the Court addressed a nonprofit corporation's first amendment challenge to the Federal Election Campaign Act's (FECA) prohibition against indirect corporate political expenditures.[3] The Court found a distinction between "traditional corporations organized for economic gain," Massachusetts Citizens for Life, 479 U.S. at 259, 107 S.Ct. at 628, 93 L.Ed.2d at 557 (citing National Conservative Political Action Comm., 470 U.S. at 500, 105 S.Ct. at 1470), and corporations "formed to disseminate political ideas, not to amass capital." Id. Traditional corporations raise "the prospect that resources amassed in the economic marketplace may be used to provide an unfair advantage in the political marketplace." Id. 479 U.S. at 257, 107 S.Ct. at 628, 93 L.Ed.2d at 556. Because this prospect is not presented by a corporation which is instead formed to disseminate political ideas, the mere threat or appearance of corruption "hardly constitutes the compelling state interest necessary to justify any infringement on First Amendment freedom." Id. 479 U.S. at 263, 107 S.Ct. at 630, 93 L.Ed.2d at 560 (emphasis in original).
 
 
 20
 We now reexamine the district court's holding in light of Massachusetts Citizens for Life.
 
 III.
 
 21
 The Chamber's proposed political advertisement is speech which lies at the core of the first amendment.
 
 
 22
 The [Federal Election Campaign] Act's contribution and expenditure limitations operate in an area of the most fundamental Fi st Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Roth v United States, 354 US 476, 484, 77 S Ct 1304 [1308] 1 L Ed 2d 1498, 14 Ohio Ops 2d 331 (1957). Although First Amendment protections are not confined to "the exposition of ideas," Winters v New York, 333 US 507, 510, 68 S Ct 665 (1948), 92 L Ed 840, "there is practically universal agreement that a major purpose of th[e] Amendment was to protect the free discussion of governmental affairs, ... of course includ[ing] discussions of candidates...." Mills v Alabama, 384 US 214, 218, 86 S Ct 1434 [1436] (1966), 16 L Ed 2d 484. This no more than reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," New York Times Co. v Sullivan, 376 US 254, 270, 84 S Ct 710 11 L Ed 2d 686, 95 ALR2d 1412 (1964). In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in Monitor Patriot Co. v Roy, 401 US 265, 272, 91 S Ct 621 (1971), 28 L Ed 2d 35, "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."
 
 
 23
 Buckley v. Valeo, 424 U.S. at 14-15, 96 S.Ct. at 632-33.
 
 
 24
 The Chamber does not surrender its first amendment rights merely by assuming the corporate form of organization.
 
 
 25
 We thus find no support in the First or Fourteenth Amendment, or in the decisions of this Court, for the proposition that speech that otherwise would be within the protection of the First Amendment loses that protection simply because its source is a corporation....
 
 
 26
 Bellotti, 435 U.S. at 784, 98 S.Ct. at 1420.
 
 
 27
 Nonetheless, a corporation's political speech through contributions and independent expenditures can be constitutionally restricted if the government can show that the regulation is a "precisely drawn means of serving a compelling state interest." Consolidated Edison, 447 U.S. at 540, 100 S.Ct. at 2334. The Supreme Court has held that:[P]reventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.
 
 
 28
 National Conservative Political Action Comm., 470 U.S. at 496-97, 105 S.Ct. at 1468-69.
 
 
 29
 The Supreme Court has invalidated independent expenditure limits in two contexts: the 1971 Campaign Act's ceiling on expenditures by individuals and groups, Buckley v. Valeo, 424 U.S. at 51, 96 S.Ct. at 650, and the Presidential Election Campaign Fund Act's limitation on expenditures by independent political committees, National Conservative Political Action Comm., 470 U.S. at 496-501, 105 S.Ct. at 1468-71.
 
 
 30
 The Court has not addressed the constitutionality of limitations on indirect political expenditures by traditional corporations that function as profit-making enterprises. Massachusetts Citizens for Life, 479 U.S. at 263, 107 S.Ct. at 630, 93 L.Ed.2d at 560. However, the Court has upheld the FECA limitations on a corporation's solicitation of contributions to its segregated political purpose fund. Federal Election Comm. v. National Right to Work Comm., 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982).
 
 
 31
 In order to prevent both actual and apparent corruption, Congress aimed a part of its regulatory scheme at corporations. The statute reflects a legislative judgment that the special characteristics of the corporate structure require particularly careful regulations. See United States v Morton Salt Co., 338 US 632, 652, 70 S Ct 357 (1950), 94 L Ed 401. While Sec. 441b restricts the solicitation of corporations and labor unions without great financial resources, as well as those more fortunately situated, we accept Congress' judgment that it is the potential for such influence that demands regulation. Nor will we second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared. As we said in California Medical Assn. v. FEC, 453 US 182, 201, 101 S Ct 2712 [2724] (1981), 69 L Ed 2d 567, the "differing structures and purposes" of different entities "may require different forms of regulation in order to protect the integrity of the electoral process."
 
 
 32
 National Right to Work Comm., 459 U.S. at 209-10, 103 S.Ct. at 560-61.
 
 
 33
 Despite the opportunity to do so, the Court did not extend the compelling state interest analysis of contribution limitations in National Right to Work Comm. to the independent expenditure limitations which FECA places on nonprofit corporations organized to disseminate political ideas.[4] Massachusetts Citizens for Life, 479 U.S. at 263, 107 S.Ct. at 630, 93 L.Ed.2d at 560. Massachusetts Citizens for Life, Inc. (MCFL) was a nonprofit, nonstock corporation organized for the purpose of disseminating ideas supportive of the pro-life movement. It was composed of "members" who either supported its activities or contributed to the organization. It did not accept contributions from corporations or unions. Under these facts, the Court found that the "spectre of corruption" was not a sufficiently compelling interest to justify FECA's impact upon MCFL's first amendment rights. Id.
 
 
 34
 Thus, the Court specifically rejected the analysis employed by the district court in this case. The Chamber is a nonprofit corporation comprised of voluntary members who have banded together to promote their common interest in Michigan's business community. It is in essence a corporation formed for ideological purposes and is a "voluntary political association." As such, it does "not suddenly present the spectre of corruption merely by assuming the corporate form." Id. 479 U.S. at 262, 263, 107 S.Ct. at 629-30, 93 L.Ed.2d at 93 L.Ed.2d.
 
 
 35
 The district court made no finding that independent expenditures by corporate entities like the Chamber actually corrupted the electoral process. Rather, the court held that "a finding of the threat or appearance of corruption is enough." Michigan State Chamber of Commerce, 643 F.Supp. at 404. We conclude, as the court did in Massachusetts Citizens for Life, that "[t]his hardly constitutes the compelling state interest necessary to justify any infringement on First Amendment freedom." Massachusetts Citizens for Life, 479 U.S. at 263, 107 S.Ct. at 630, 93 L.Ed.2d at 560 (emphasis in original).
 
 
 36
 The Court in Massachusetts Citizens for Life noted that MCFL had three features which were essential to the Court's holding that any appearance of corruption resulting from MCFL's independent expenditures was not a compelling state interest. First, like the Chamber, MCFL "was formed for the express purpose of promoting political ideas, and cannot engage in business activities." Id. The Chamber is organized as a nonprofit corporation under state and federal laws. Although its bylaws empower it to provide training and education for its members and to collect data and make surveys, they also empower the chamber to promote conditions favorable to the economic development of Michigan and to "perform any ... acts of a political nature permitted by the laws of the state of Michigan." Therefore, the Chamber, much like MCFL, was formed to promote and disseminate ideas--in the case of the Chamber, ideas and interests supportive of Michigan's business community--not to amass capital. And, like MCFL, "the resources it has available are not a function of its services in the economic marketplace, but its popularity in the political marketplace." Id. 479 U.S. at 259, 107 S.Ct. at 628, 93 L.Ed.2d at 557.
 
 
 37
 Second, the Court noted that MCFL, like the Chamber, "has no shareholders or other persons affiliated so as to have a claim on its assets or earnings." Id. The Chamber is funded by annual dues. Members who fail to timely pay these dues are subject to suspension by the Chamber. The Chamber's members are not akin to minority shareholders of a "traditional" corporation who do not support the same candidates supported by the corporation's independent political expenditures.
 
 
 38
 Individuals who contribute to [MCFL] are fully aware of its political purposes, and in fact contribute precisely because they support those purposes. It is true that a contributor may not be aware of the exact use to which his or her money ultimately may be put, or the specific candidate that it may be used to support. However, individuals contribute to a political organization in part because they regard such a contribution as a more effective means of advocacy than spending the money under their own personal direction. Any contribution therefore necessarily involves at least some degree of delegation of authority to use such funds in a manner that best serves the shared political purposes of the organization and contributor.... Finally, a contributor dissatisfied with how funds are used can simply stop contributing.
 
 
 39
 Id. 479 U.S. at 260, 107 S.Ct. at 629, 93 L.Ed.2d at 558.
 
 Third, the Court noted that:
 
 40
 MCFL was not established by a business corporation or a labor union, and it is its policy not to accept contributions from such entities. This prevents such corporations from serving as conduits for the type of direct spending that creates a threat to the political marketplace.
 
 
 41
 Id. 479 U.S. at 263, 107 S.Ct. at 630, 93 L.Ed.2d. The Chamber is not a sub-corporation established by a parent corporation. However, approximately seventy-five percent of its eight thousand members are corporations. Nonetheless, the Michigan Campaign Finance Act forecloses the danger of the Chamber's corporate members using the Chamber as a conduit for massive undisclosed corporate political spending. Section 51 of the Act, M.C.L.A. Sec. 169.251(1) (1987 Supp.), requires that each person[5] who makes independent expenditures in excess of one hundred dollars in one calendar year in support of a candidate, file a report with the county clerk. The report must include, among other things, the name and address of each person who contributed more than one hundred dollars to the expenditure. Thus, the reporting obligations of Sec. 51 of the Act preclude, as a practical matter, the prospect of "faceless" Chamber corporate members utilizing the Chamber as a conduit through which massive undisclosed contributions are funneled for political purposes. Further, Sec. 47 of the Act requires that printed advertisements, like that proposed by the Chamber, which relate to a candidate and are funded by indirect expenditures, contain the name of the person paying for the ad. M.C.L.A. Sec. 169.247(1) (1987 Supp.). If the advertisement is not authorized by the candidate's own committee, it must so state. M.C.L.A. Sec. 169.247(3).
 
 
 42
 We conclude that the Chamber, like Massachusetts Citizens for Life, Inc., is not the type of "traditional corporatio[n] organized for economic gain." Massachusetts Citizens for Life, 479 U.S. at 259, 107 S.Ct. at 628, 93 L.Ed.2d at 557 (citing National Conservative Political Action Comm., 470 U.S. at 500, 105 S.Ct. at 1470). It exists for purely ideological purposes. Its "business" is to develop, promote, and disseminate pro-business ideas and to influence political decisions. Since it does not operate in "the economic sphere," it does not exercise economic power as a result amassing "great aggregations of capital." Consequently, it does not and cannot exercise the kind of economic power the district court found "may very well create an atmosphere of distrust or the appearance of corruption in the electoral process." Michigan State Chamber of Commerce, 643 F.Supp. at 403. The potential for unfair deployment of wealth for political purposes is not presented by the Chamber's mere incorporation. The defendants have failed to make the necessary showing of actual corruption required to uphold the constitutionality of Sec. 54 as applied to the Chamber. We therefore hold that Sec. 54's restriction on independent corporate spending is unconstitutional as applied to the Chamber, for it infringes upon speech at the core of the first amendment without a compelling justification.[6]
 
 
 43
 Because we find that the application of Sec. 54 to the Chamber's speech is not supported by a compelling state interest, we need not consider the Chamber's arguments that the section is not "precisely drawn," Consolidated Edison, 447 U.S. at 540, 2334, or that it is violative of the equal protection clause of the fourteenth amendment. Accordingly, the judgment of the district court upholding Sec. 54 is REVERSED.
 
 
 
 *
 The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988
 
 
 [1]
 Section 54(5) of the Act, M.C.L.A. Sec. 169.254(5) (1987 Supp.), imposes criminal penalties upon violators of Sec. 54(1):
 A person who knowingly violates this section is guilty of a felony and shall be punished by fine of not more than $5,000.00 or imprisoned for not more than three years, or both, and if the person is other than an individual, the person shall be fined not more than $10,000.00.
 
 
 [2]
 A nonprofit corporation may solicit contributions to its separate political fund from the following persons or their spouses: members of the corporation who are individuals, stockholders or members of the corporation, officers or directors of members of the corporation, or employees of the members of the corporation who have policymaking, managerial, professional, supervisory, or administrative nonclerical responsibilities. M.C.L.A. Sec. 169.255(3)(a)-(d)
 
 
 [3]
 Section 316 of FECA, 2 U.S.C. Sec. 441b (1985), is similar to Sec. 54 of the Michigan Campaign Finance Act. Section 441b prohibits corporations organized under the authority of any law of Congress from using their treasury funds to make "expenditure[s] in connection with any election to any political office ..." and all corporations from making indirect expenditures in federal elections. Also like the Michigan Act, FECA, in Sec. 441b, provides an exception for corporations which establish separate segregated funds for political activity
 
 
 [4]
 "We have consistently held that restrictions on contributions require less compelling justification than restrictions on independent spending." Massachusetts Citizens for Life, 479 U.S. at 259, 107 S.Ct. at 628, 93 L.Ed.2d at 557 (citing National Conservative Political Action Comm., 470 U.S. at 500, 105 S.Ct. at 1470; California Medical Ass'n v. Federal Election Comm., 453 U.S. 182, 194, 196-97, 101 S.Ct. 2712, 2721, 2721-22, 69 L.Ed.2d 567 (1981); Buckley v. Valeo, 424 U.S. 20-22, 96 S.Ct. at 635-36)
 
 
 [5]
 The Act's definition of "person" includes individuals as well as corporations. M.C.L.A. Sec. 169.211(1)
 
 
 [6]
 As noted, Sec. 54's limitation on corporate independent expenditures applies to all corporations, including traditional corporations organized for economic gain as well as corporations like the Chamber which are organized to disseminate political ideas and not to amass capital. We draw no conclusions as to whether the state's interest in preventing the appearance or threat of corruption supports the application of Sec. 54 to traditional corporations