BAY COUNTY DEMOCRATIC PARTY
and Michigan Democratic Party,
Plaintiffs,

v.

Terri Lynn LAND, Michigan Secretary
of State, and Christopher M. Thomas,
Michigan Director of Elections, in
their official capacities, Defendants.

and

Michigan State Conference of NAACP
Branches, Association of Community
Organizations for Reform Now, and
Project Vote, Plaintiffs,

v.

Terri Lynn Land, Michigan Secretary of
State, and Christopher M. Thomas,
Michigan Director of Elections, in
their official capacities, Defendants.

Nos. 04–10257–BC, 04–10267–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Oct. 13, 2004.

Michael L. Pitt, Peggy G. Pitt, Pitt, Dowty, Royal Oak, MI, Amos E. Williams, Amos E. Williams Assoc., Detroit, MI, for Plaintiff.

## OPINION AND ORDER DENYING MOTION TO TRANSFER VENUE

LAWSON, District Judge.

The plaintiffs have filed an action against the Michigan secretary of state and its director of elections alleging that the State's intended procedure for casting and counting provisional ballots at the upcoming general election, as outlined in an instructional memorandum directed to election officials throughout the state, will violate the Help America Vote Act of 2002, Pub. L 107–252, 116 Stat. 1668, 42 U.S.C. § 15301, *et seq.*, and state laws implementing this federal legislation. The plaintiffs contend that if the secretary's proposed procedure is allowed to occur, several voters who are members of the plaintiffs' respective organizations are likely to be disenfranchised. The defendants have filed a motion to transfer venue of the action to the Western District of Michigan contending that the only proper venue for an action against a state official is the district that encompasses the State's seat of government. Alternatively, the defendants seek transfer for the convenience of the parties and witnesses. The plaintiffs have filed an answer in opposition to the motion. The Court has reviewed the submissions and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid

in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

The Court finds that the defendants' arguments are not supported by the plain language of the current venue statutes. Federal actions against the Michigan secretary of state over rules and practices governing federal elections traditionally have been brought in both the Eastern and Western Districts of Michigan. There is no rule that requires such actions to be brought only in the district in which the state's seat of government is located, and no inconvenience resulting from litigating in the State's more populous district reasonably can be claimed by a state official who has a mandate to administer elections throughout the State and operates an office in each of its counties. The Court, therefore, will deny the motion to transfer venue.

### I.

■ In 2002, Congress enacted the Help America Vote Act (HAVA), 42 U.S.C. § 15301 *et. seq.*, which ostensibly was intended to address several problems experienced during the 2000 federal election. HAVA provides a remedy to voters whose qualifications to vote are questioned by allowing, among other things, those voters to cast a provisional ballot. Section 15482 of the Act provides:

> If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:

> (1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election;

> (2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is—

> (A) a registered voter in the jurisdiction in which the individual desires to vote; and

> (B) eligible to vote in that election;

> (3) An election official at the polling place shall transmit the ballot cast by the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4);

> (4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

42 U.S.C. § 15482(a)(1)-(4). HAVA thus guarantees that voters casting provisional ballots will have their votes counted if election officials can verify their eligibility in accordance with State law. In tandem with HAVA, the State of Michigan passed implementing legislation on April 24, 2004. Public Act 92 of 2004, Mich. Comp. Laws § 168.813, requires local election officials "within 6 days after the election" to "determine whether the individual voting the provisional ballot was eligible to vote a ballot and whether to tabulate the provisional ballot." Mich. Comp. Law § 168.813(1).

The complaint in this case alleges that on June 16, 2004, defendant Christopher M. Thomas, the State director of elections, issued a nine-page memorandum entitled "HAVA Compliance Procedures and Processes" aimed at summarizing applicable law with respect to casting and counting provisional ballots. Compl. Ex. 1. The memorandum, purportedly distributed to local election officials, covers several aspects of the balloting procedures including the provisional balloting process. It also makes reference to appended forms entitled *"Procedure for Issuing a Ballot If Voter's Name Does Not Appear on Registration List: A Four–Step Procedure,"* and "Procedure for Handling 'Envelope' Ballots Returned to Clerk's Office." The point of controversy that spawned these lawsuits is a directive in those forms that instructs local election officials to count provisional ballots only if "the elector confirmed that he or she currently resides in the precinct where the 'envelope' ballot was issued," and not to count provisional ballots if "[t]he elector was unable to confirm that he or she currently resides in the precinct where the 'envelope' ballot was issued." *Procedure for Handling Envelop Ballot* at 2 (Mich. Dept. Of State June 16, 2004).

The plaintiffs in these consolidated cases are the Bay County Democratic Party, a county affiliate of the of the State Central Committee of the Michigan Democratic Party located in Pinconning, Michigan; the Michigan Democratic Party; the Michigan State Conference of NAACP Branches; the Association of Community Organizations for Reform Now (ACORN); and Project Vote. According to its complaint, the Michigan State Conference of NAACP branches is a membership organization comprised of over forty statewide units of the National Association for the Advancement of Colored People (NAACP). The Michigan NAACP has a branch in Bay City, Michigan. ACORN is a large scale community organization consisting of low- and moderate-income families with members in sixty-five cities across the country. They have offices in Detroit, Flint, Kalamazoo, Benton Harbor, Pontiac, Grand Rapids, Battle Creek, Ann Arbor, and Lansing. Project Vote is a non-profit organization that aims to increase civic participation among minority and lower income citizens. The organization has five offices in Michigan. The defendants are Terri Lynn Land, the Michigan secretary of state, and Christopher M. Thomas, Michigan director of elections, both sued in their official capacities.

The plaintiffs allege in their complaints, among other things, that the defendants threaten a violation of their rights guaranteed by HAVA and as implemented by Michigan Public Act 92 of 2004. They claim that the June 16 memorandum issued by the director of elections, including the appended forms and documents, mandating procedures that State election officials must follow in implementing HAVA improperly employ the word "precinct" instead of "jurisdiction" so that voters whose names are not on polling station rosters and who show up in the correct *jurisdiction* but in the incorrect precinct will be illegally turned away and thus disenfranchised. The plaintiffs aim to enforce their rights under federal law pursuant to 42 U.S.C. § 1983, and they seek declaratory relief, injunctive relief (including the issuance of a preliminary injunction), and attorneys fees.

On October 5, 2004, the defendants filed a motion to transfer venue to the United States District Court for the Western District of Michigan, the district that encompasses the county where the State capital if found. They requested immediate consideration of their motion, and the Court ordered the plaintiffs to respond to the motion according to an expedited briefing schedule.

## II.

■ Although the purpose of the venue requirements is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, *see Leroy v. Great Western United Corp.*, 443 U.S. 173, 183, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the proper venue for a civil action is governed by statute. In civil cases "wherein jurisdiction is not founded solely on diversity of citizenship," venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

■ The defendants contend that venue in this case is improperly laid because the cause of action did not arise in this district, and the only district in which the secretary of state "resides" is where the State capital is located: Michigan's Western District. They cite *O'Neill v. Battisti*, 472 F.2d 789 (6th Cir.1972), in support of that argument. In that case, the United States District Court for the Northern District of Ohio issued a temporary restraining order enjoining the Ohio Supreme Court from taking action in a disciplinary proceeding involving a State lower court judge and from enforcing an order of the state supreme court. The Sixth Circuit reasoned that venue was improper in the Northern District of Ohio under the version of Section 1391 then in effect, which allowed a civil action "in the judicial district where all the defendants reside or where the claim arose." The court noted that regular sessions of the state supreme court were held only in the state capital, which was in the Southern District of Ohio, so venue was proper only in that district. *Id.* at 791 (stating that "the official residence of the Supreme Court of Ohio is in the place where it performs its official duties").

■ However, Section 1391 "was amended in 1990 in order to broaden the venue provisions." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998). Under the present statute, a plaintiff "may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum with a substantial connection to the plaintiff's claim." *Ibid.*

The defendants' argument that Michigan's secretary of state performs her official duties only in Lansing, Michigan and therefore may be sued only there does not withstand even the basest analysis. Of the reported Sixth Circuit decisions brought against the Michigan secretary of state involving election law issues over the past twenty-five years, seven have been brought in the Eastern District, *see Breck v. State of Mich.*, 203 F.3d 392 (6th Cir. 2000) (state judges brought equal protection challenge in the Eastern District of Michigan claiming that state laws rendered them ineligible for reelection based on age); *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir.1998) (voters and voters' rights groups brought suit in the Eastern District of Michigan challenging a state constitutional amendment imposing lifetime term limits on state legislators); *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240 (6th Cir.1997) (labor unions filed complaint in the Eastern District of Michigan seeking declaratory and injunctive relief against secretary of state challenging four provisions of the Michigan State Campaign Finance Act); *Heitmanis v. Austin,*

899 F.2d 521 (6th Cir.1990) (state central committee members brought action in the Eastern District of Michigan challenging Michigan's election law); *Michigan Chamber of Commerce v. Austin*, 788 F.2d 1178 (6th Cir.1986) (suit was brought in the Eastern District of Michigan challenging the constitutionality of a Michigan statute limiting amount corporations may contribute to a ballot question committee); *Goldman–Frankie v. Austin*, 727 F.2d 603 (6th Cir.1984) (political candidate brought suit in the Eastern District of Michigan challenging the constitutionality of a Michigan election provision); *Dean v. Austin*, 602 F.2d 121 (6th Cir.1979) (labor party filed suit in the Eastern District of Michigan against the secretary of state alleging violation of Michigan election law because candidate names were excluded from the ballot), and five were brought in the Western District. *See Nelson v. Miller*, 170 F.3d 641 (6th Cir.1999) (blind voters brought action in the Western District of Michigan alleging that the secretary failed to make available a means to mark ballots without the assistance of a third party in violation of the Americans with Disabilities Act); *Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833 (6th Cir.1997); *Michigan State Chamber of Commerce v. Austin*, 856 F.2d 783 (6th Cir.1988); *Kay v. Austin*, 621 F.2d 809 (6th Cir.1980).

The Michigan secretary of state and director of elections have a statutory obligation to perform their official duties not only in Lansing but throughout the State. Section 168.33 of the Michigan Compiled Laws states:

(1) The director of elections shall conduct training schools *throughout this state* preceding the general November election, and preceding such other elections as the director considers advisable, for county clerks and their representatives with respect to the conducting of elections in accordance with the election laws. Included in this training shall be instruction on the uniform voting system. In case any county clerk shall fail to conduct in his or her county a training school for election boards within the county, the director of elections shall conduct such training school, the cost of the training school to be charged as an obligation of the county.

(2) The director of elections shall train *all county, city, and township clerks* who are involved in the training of precinct inspectors. The training shall include team training and monitoring of their performance as trainers.

(3) The director of elections shall conduct all precinct inspector training in counties where the clerk has not been accredited to conduct the training schools.

Mich. Comp Laws § 168.33 (emphasis added). The Michigan secretary of state's mission statement requires that she:

is to continually improve customer service using innovation and new technology. The Department will serve the *citizens of Michigan* with programs designed to enhance driver safety; protect automotive consumers; and ensure the integrity of the motor vehicle administration system and the *statewide elections process.*

Dept. of State Mission and Strategic Objectives (available on-line at http://www.michigan.gov/s os/0,1607,7–127–1640—9105—9108——,00.html)(emphasis added).

Her self-proclaimed duties include being designated as Michigan's Chief Motor Vehicle Administrator, *Chief Election Officer* and Keeper of the Great Seal. The Secretary is second in line of succession to the Governor and acts in that capacity whenever both the Governor and Lieutenant Governor are out of state. The Secretary is a member of the State Administrative Board, the Na-

tional Association of Secretaries of State and the Governor's Traffic Safety Advisory Commission.

*Id.* The secretary of state has 173 branch locations, with at least one branch in every county located throughout the state, that perform a wide variety of services. According to the secretary,

> [b]ranch offices are a critical component of the Department of State's mission of delivering prompt and accurate service to every Michigan citizen. The site offers information for office locations (173), phone numbers, service hours; as well as indicating offices that provide special services such as instant titles, mechanic testing, and the international registration program (IRP).
>
> Additional information about driver licensing requirements, personal identification cards, titling and registering vehicles, recreational vehicles, *voting,* and a host of other services available in a branch office are provided in this web site. Additionally, license plate registration renewals can be completed using one of these convenient options: renewal by touch-tone telephone, Internet, or mail.

Branch Office Locator & Office Hours (available at http://www.michigan.gov/sos/0,1607,7–127–1640––3408–34560–, 00.html)(emphasis added). Bay County has one such branch office.

In addition to permanent branch offices, the secretary of state also maintains mobile offices. These offices also perform functions related to voting. According to a recent news report, a secretary of state mobile office had come to Saginaw:

> But rather than wait for young people to find a Secretary of State's office, the office is taking voter registration to the young people in the days leading up to the Nov. 2 general election.
>
> A mobile registration office was at Saginaw Valley State University on Tuesday and Wednesday, signing up students as part of a four week swing through seven universities.
>
> The office's goal is to register new voters, although it also provided the same services that are available at any branch office . . .

Justin Kalmes, "Secretary of State Takes Voter Registration Effort on the Road," *Bay City Times,* (September 30, 2004), at 1A.

The prevailing view is that suits against government officials generally are proper in the judicial district in which those officials perform their duties. *See Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1360 (5th Cir.1980), *rev'd on other grounds,* 450 U.S. 147, 171, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *O'Neill,* 472 F.2d at 791; *Ernst v. Sec. of the Interior,* 244 F.2d 344, 345 (9th Cir.1957). It is abundantly clear that the defendants perform official duties in this district and therefore "reside" here within the meaning of 28 U.S.C. § 1391(b)(1).

■ The defendants also claim that no part of the claim has occurred in this district since the election directives were drafted in and distributed from Lansing, and no voter's provisional ballot has been ignored so no injury has occurred yet. However, the language of Section 1391(b)(2)—which permits venue to be laid in a district "in which a substantial part of the events giving rise to the claim occur"—has been interpreted by the Sixth Circuit to mean a substantial connection to the claim. After the 1990 amendments to the venue statute, courts "no longer ask which district among the two or more potential forums is the best venue. Rather they ask whether the district the plaintiff chose has a substantial connection to the claim, *whether or not other forums had greater contacts.*" *First of Mich.,* 141 F.3d at 263 (internal quotes and citations omitted; em-

phasis added). To establish a substantial connection to the claim, it is generally sufficient to demonstrate that injury or loss alleged in the lawsuit occurred in the chosen venue. *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 41–43 (1st Cir.2001). In cases involving state officials, a substantial connection to the claim occurs not only where the "triggering event" takes place, but also where the effects of the decision are felt. *See McClure v. Manchin,* 301 F.Supp.2d 564, 569 (N.D.W.Va.2003) (rejecting secretary of state's claim that a state election law challenge must be brought in the district where the state government sits); *Emison v. Catalano,* 951 F.Supp. 714, 721 (E.D.Pa. 1996) (suits challenging official acts may be brought in the district where the effects of the challenged statute are brought despite being enacted elsewhere); *School Dist. of Philadelphia v. Pennsylvania Milk Marketing Bd.,* 877 F.Supp. 245, 249 (E.D.Pa. 1995) (rejecting the argument that venue is proper only where official decision was made). In this case, the effects of the election directive are felt statewide, including within Bay County where one of the plaintiffs is located.

 Finally, the defendants argue that even if venue is properly laid in the Eastern District, the court should exercise its discretion and transfer the action to the Western District. Under 28 U.S.C. § 1404(a), a district court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice … to any other district or division where it might have been brought." However, the moving party must show that both practicality and fairness militate in favor of the alternate venue. *Thomas v. Home Depot USA, Inc.,* 131 F.Supp.2d. 934, 936 (E.D.Mich.2001). Generally, courts grant substantial deference to the plaintiff's choice of forum. *Steelcase, Inc. v. Mar-Mol Co.,* 210 F.Supp.2d. 920, 937 (W.D.Mich.2002).

The defendants have not made a showing that is sufficient to overcome the deference due the plaintiffs' choice of forum. Lansing is located approximately 100 miles from Bay City in an adjacent federal judicial district. Courts generally have found such a distance negligible as a basis for a discretionary venue change. *See Carlile v. Continental Airlines, Inc.,* 953 F.Supp. 169, 171 (S.D.Tex.1997) (rejecting discretionary venue change from Houston to Galveston); *Leesona Corp. v. Duplan Corp.,* 317 F.Supp. 290, 299–300 (D.R.I. 1970) (200–mile distance between Rhode Island and New York is insignificant in terms of convenience of the parties and witnesses). The distance between Lansing and Bay City is minimal, especially considering that both the director of elections and the secretary of state have statewide mandates to administer the election laws. Both are responsible for activities in some 173 branch offices and additional mobile offices dealing with elections and other administrative functions. The Michigan attorney general, who represents the defendants in this case, regularly litigates in this Court. An argument premised on inconvenience is difficult to accept when the defendants routinely conduct business around the state and their advocate routinely appears in this Court.

### III.

The Court finds that venue is properly laid in this Court and that there is no basis to transfer venue to an adjacent judicial district for the convenience of parties or witnesses.

Accordingly, it is **ORDERED** that the defendants' motion to transfer venue [dkt # 8] is **DENIED.**