Frankie JAMES et al., Plaintiffs,

v.

Brereton JONES et al., Defendants.

Civ. A. No. C89–0139–P(H).

United States District Court,
W.D. Kentucky,
Paducah Division.

May 5, 1993.

Anne Marie Regan, Ronald Eric Marstin, David A. Friedman, Louisville, KY, James R. Bell, San Francisco, CA, for plaintiffs.

Maria T. Geisler, Cabinet for Human Resources, Frankfort, KY, for Governor Brereton C. Jones, Cabinet for Human Resources.

Lucy B. Richardson, Kentucky Justice Cabinet, Frankfort, KY, for Justice Cabinet.

Susan P. Spickard, Spickard & Leibson, Louisville, KY, for Jefferson County Youth Center.

Linda Katz Ain, Edward W. Gardner, Lexington–Fayette Urban County Government, Lexington, KY, for Lexington–Fayette Urban County Government.

David A. Barber, Prestonberg, KY, for Margie Osborne, Director, Big Sandy Detention Center.

Suzanne D. Cordery, Office of Gen. Counsel, Corrections Cabinet, Frankfort, KY, for Jack Lewis, Com'r, Dept. of Corrections.

Robert Milton Kirtley, Kirtley & Kirtley, Owensboro, KY, for Harold Taylor, Jailer, William M. Norris, Jr., Gary Boswell, Fred Marksberry and Davis Warren.

C. Thomas Hectus, R. Thaddeus Keal, Williams & Wagoner, Louisville, KY, for Hunter Hay, Bob Arnold, Carmella Benassi, Howard Dawson, Jean Demerson, J.W. Luttrell, Harold Robinson and Jennie Smithers.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendants ask this Court to dismiss this Section 1983 class action suit, in which Plaintiffs allege that juveniles in Kentucky are confined in violation of the Constitution and federal law. Defendants specifically contend that: (1) Plaintiffs cannot claim a right of action to enforce the provisions of the Juvenile Justice and Delinquency Prevention Act ("JJDPA"), 42 U.S.C. § 5601 *et seq.*; (2) the JJDPA does not apply to Kentucky, since the federal government does not currently provide funding to Kentucky under the Act; (3) Plaintiffs lack standing to prosecute their claims; (4) Plaintiffs have failed to name assertedly indispensable parties, Kentucky's state court judges, as defendants in this action; and (5) none of the named Defendants can be held liable for the violations of federal law alleged in Plaintiffs' Complaint. Although the provisions of the JJDPA have undoubtedly been the subject of some dispute in other jurisdictions, the Court could find little specific guidance on the questions posed by the pending motions. A careful review of each argument persuades this Court that Defendants' Motions should be denied.

## I. STATUS OF CLASS ACTION

This litigation now comprises the following plaintiff classes and named defendants contesting the causes of action outlined below.

### A. PLAINTIFF CLASS:

Judge Simpson's Order of May 20, 1991 defined a single class comprising "all Kentucky juveniles" who meet any of the following characteristics: (1) Juveniles who have been or will be confined in jails (presumably with adults), regardless of the child's legal position (delinquent, status offender, "nonoffender"); (2) Status offenders and "nonoffenders" (such as dependent, neglected, or abused children) confined in secure detention facilities; (3) Status offenders and "non-offenders" confined with juvenile delinquents.

Plaintiffs' Amended Complaint, filed in January, 1993, realigns those into two categories:

\* CATEGORY 1: Juvenile delinquents or status offenders confined in "jails";

\* CATEGORY 2: Status offenders confined in a secure detention facility.

## B. NAMED PLAINTIFFS: THE CLASS REPRESENTATIVES:

(1) FRANKIE JAMES: a status offender who had been confined in a secure detention facility in Jefferson County. Cross reference: Category 2; Defendant HELLER (per operation of secure detention facility, Cardinal Treatment Center).

(2) COLE YOUNGER: a status offender who had been confined in a secure detention facility in Jefferson County. Cross reference: Category 2; Defendant STEITZ.

(3) M. BARKER: a status offender who had been confined in a secure detention facility in Jefferson County prior to adjudication as a status offender. Cross reference: Category 2; Defendant STEITZ.

(4) BLAZE STARR: a status offender who had been confined in a secure detention facility in Fayette County. Cross reference: Category 2; Defendant KENDRICK.

(5) BILLY T. KIDD: a status offender who had been confined in a secure detention facility (Big Sandy Detention Center). Cross reference: Category 2; Defendant OSBORNE.

(6) B.F. NELSON: a juvenile delinquent who had been confined in "jail" in Daviess County. Cross reference: Category 1; Defendants TAYLOR (jailer), NORRIS (county judge), and BOSWELL et al. (fiscal court).

(7) BONNIE BARROW: a status offender who had been confined in "jail" in Franklin County. Cross reference: Category 1; Defendants HAY (jailer), ARNOLD (county judge), and BENASSI et al. (fiscal court).

## C. NAMED DEFENDANTS:

*State Government Defendants:*

(1) BRERETON JONES: Governor. Allegation: responsible for all unlawful confinement of youths (Categories 1 & 2); Plaintiffs: all. Causes of action: (A) JJDPA; (B) Eighth Amendment.

(2) LEONARD HELLER: Secretary, Cabinet for Human Resources. Allegation: detention of status offenders in secure detention facilities, specifically Cardinal Treatment Center (Category 2); Plaintiff: FRANKIE JAMES. Cause of action: (A) JJDPA.

(3) BILLY WELLMAN: Secretary, Justice Cabinet. Allegation: responsible for failures to comply with JJDPA (Category 2); Plaintiffs: all. Cause of action: (A) JJDPA.

(4) JACK LEWIS: Commissioner, Department of Corrections. Allegation: responsible for all unlawful confinement (Categories 1 & 2); Plaintiffs: all. Causes of action: (A) JJDPA; (B) Eighth Amendment.

*Secure Detention Facilities:*

(5) DONALD STEITZ: Director, Jefferson County Youth Center (JCYC). Allegation: detention of status offenders in secure detention facility (Category 2); Plaintiff: YOUNGER. Cause of action: (A) JJDPA.

(6) WILLIAM KENDRICK: Director, Lexington–Fayette Juvenile Detention Center (LFJDC). Allegation: detention of status offenders in secure detention facility (Category 2); Plaintiff: STARR. Cause of action: (A) JJDPA.

(7) MARGIE OSBORNE: Director, Big Sandy Detention Center (BSDC). Allegation: detention of status offenders in secure detention facility (Category 2); Plaintiff: KIDD. Cause of action: (A) JJDPA.

*Jailers:*

(8) HUNTER HAY: Franklin County. Allegations: (A) detention of status offenders in jail (Category 2); (B) detention of status offenders in such fashion as to allow contact with adults (Categories 1 & 2). Plaintiff: BARROW. Causes of action: (A) JJDPA; (B) Eighth Amendment.

(9) HAROLD TAYLOR: Daviess County. Allegation: detention of juveniles with adults (Category 1); Plaintiff: NELSON. Causes of action: (A) JJDPA; (B) Eighth Amendment.

*County Judges and Fiscal Court Members:*

(10) BOB ARNOLD, Franklin County Judge–Executive;

(11) FRANKLIN COUNTY FISCAL COURT: BENASSI, DAWSON, DEMERSON, LUTTRELL, ROBINSON, SMITHERS. Allegations: (A) detention of status offenders in jail (Category 2); (B) detention of status offenders in such fashion as to allow contact with adults (Category 1). Plaintiff: BARROW. Causes of action: (A) JJDPA; (B) Eighth Amendment.

(12) WILLIAM NORRIS, Daviess County Judge–Executive;

(13) DAVIESS COUNTY FISCAL COURT: BOSWELL, MARKSBERRY, WARREN. Allegation: detention of juveniles with adults (Category 1); Plaintiff: NELSON. Causes of action: (A) JJDPA; (B) Eighth Amendment.

### D. CAUSES OF ACTION:

(1) **EIGHTH AMENDMENT:**

PLAINTIFFS: Barrow and Nelson.

ALLEGATIONS: Plaintiffs contend that Franklin and Daviess Counties confine juveniles in jails which lack: (1) appropriate programs and services for juveniles, (2) staff trained to respond to juveniles' needs, (3) special education services, (4) appropriate sports and religious programs, and (5) necessary needs-assessment reviews. This allegedly results in cruel and unusual punishment.

DEFENDANTS: Jones, Lewis, Franklin County (jailer, county judge, and fiscal court), Daviess County (jailer, county judge, and fiscal court).

(2) **JUVENILE JUSTICE AND DELINQUENCY PREVENTION ACT:**

PLAINTIFFS: All Plaintiffs make some allegations.

ALLEGATIONS: Plaintiffs contend that JJDPA prohibits: (1) detention of youths with adults, or in such fashion that youths might come into accidental contact with adults (Category 1); and (2) secure detention of status offenders (Category 2).

DEFENDANTS: (1) CATEGORY 1: Jones, Lewis, Franklin County (jailer, county judge, and fiscal court), Daviess County (jailer, county judge, and fiscal court). (2) CATEGORY 2: all.

## II. SUBJECT MATTER JURISDICTION

Defendants advance two arguments in their effort to deny Plaintiffs the opportunity to maintain this lawsuit. Defendants contend that Plaintiffs possess no legal right to enforce the Juvenile Justice Act, and insist that the JJDPA in any event no longer governs Kentucky's confinement of juveniles.

### A. Existence of a Private Right of Action Under the Juvenile Justice Act:

Several Defendants insist that the Juvenile Justice and Delinquency Prevention Act extends no federal rights to Plaintiffs, and that the statute accordingly contains nothing for Plaintiffs to enforce under Section 1983.[1] This Court considered and rejected this argument when Defendants first presented it nearly two years ago. (Mem. Op. of May 20, 1991 (Simpson, J.) at 7–9.) This Court applied the analysis recommended by the Supreme Court in *Wilder v. Virginia Hosp. Assoc.,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), and concluded that Plaintiffs had stated a claim to relief under Section 1983 for the deprivation of rights secured by the JJDPA. (Mem.Op. at 9.) Defendants suggest that the subsequent Supreme Court opinion in *Suter v. Artist M.,* —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), has narrowed or replaced the *Wilder* analysis, and they ask this Court to reconsider its original findings according to the standard described in *Suter.*

A comparison of *Wilder* and *Suter* reveals no fundamental conflict between the rules applied in the two cases. The two opinions employ the same analytical framework to identify enforceable federal rights. Both cases declare that Section 1983 provides a remedy for violations of federal statute un-

---

**1.** *See* Motions to Dismiss of Defendants Kendrick (Docket No. 159); Lewis (D.No. 161); Hay, Arnold, Benassi, Dawson, Demerson, Luttrell, Robinson, and Smithers (D. No. 171); and Wellman (D. No. 174). *See also* Response of Defendant Steitz to Plaintiffs' Pleading Against Dismissal (D. No. 176).

less the underlying statute does not create enforceable rights or the statute makes enforcement through Section 1983 unavailable. *Compare Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517, *and Suter*, —— U.S. at ——, 112 S.Ct. at 1366. The two opinions diverge only in their application of this uniform rule to the varying facts presented in the different lawsuits. The Court in *Suter* concluded that the federal statute under review created no enforceable rights where the law provided merely "a directive whose meaning will obviously vary with the circumstances of each individual case." *Suter*, —— U.S. at ——, 112 S.Ct. at 1368. This result was considered appropriate where the exclusion of a private remedy would not render the statutory language "a dead letter." *Id.* at ——, 112 S.Ct. at 1369. The *Wilder* opinion, by contrast, found that the federal statute under review created an interest in the plaintiffs that was not "vague and amorphous", but was instead "well within the competence of the judiciary" to enforce. *Wilder*, 496 U.S. at 509, 520, 110 S.Ct. at 2517, 2523. The Court determined that the refusal to find a private remedy would have rendered the statute "essentially meaningless" and "a dead letter." *Id.* at 512–515, 110 S.Ct. at 2519–20.

This Court has determined previously, and now declares again, that Congress intended the JJDPA's provisions to benefit juveniles like Plaintiffs, and that the statute's clearly-stated terms constitute much more than a "mere suggestion or nudge." (Mem.Op. of May 20, 1991 at 9.) The law's mandates regarding deinstitutionalization, separation, and jail removal are not mere "directives . . . vary[ing] with the circumstances of each individual case", but are instead strict requirements readily capable of judicial enforcement. These important mandates would lose much of their value if this Court were to hold that the JJDPA contains no private remedy to facilitate the enforcement of its substantive provisions.

### B. Suspension of Kentucky's Receipt of Juvenile Justice Act Funds:

■ Defendants unanimously contend that the provisions of the Juvenile Justice and Delinquency Prevention Act no longer bind the Commonwealth of Kentucky, and that dismissal therefore is proper, because Kentucky does not presently receive JJDPA funds.[2] Plaintiffs concede that the federal government has suspended JJDPA funding to Kentucky, but allege that Defendants are currently appealing this suspension and add that Defendants plan to seek JJDPA funds again in the near future. (Amended Complaint, ¶ 31; Pls.' Resp. to Def. Taylor's Mot. to Dismiss, D. No. 169, at 3–4.)

Kentucky's receipt of JJDPA funding implicates both Plaintiffs' right of action and the remedy to which Plaintiffs may be entitled. Legislation enacted by Congress under its spending power, like the JJDPA, proceeds "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981). Such "federally imposed conditions" have no force, and potential beneficiaries have no cause of action, if a State refuses the federal funding to which those conditions are attached. *Id.* at 11, 101 S.Ct. at 1537; *Kentucky Dep't of Human Resources v. Donovan*, 704 F.2d 288, 299 (6th Cir.1983).

The presence or absence of federal funding may also affect the availability of prospective injunctive relief, which is the sole remedy Plaintiffs seek in this litigation. Though the Court does not now intend to resolve this issue conclusively, it appears that the typical equitable remedy for a State's violation of spending program requirements is an injunction prohibiting further federal disbursements unless the State enters into compliance with those requirements within a reasonable time. *Pennhurst*, 451 U.S. at 29, 101 S.Ct. at 1546. If the State affirmatively rejects federal funds, a court likely cannot require the State to conform its conduct to the no-longer-applicable federal standards. *Rosado v. Wyman*, 397 U.S. 397, 420–21, 90 S.Ct. 1207, 1222, 25 L.Ed.2d 442 (1970) (State

---

**2.** *See* Motions to Dismiss of Defendants Taylor, Norris, Boswell, Marksberry, and Warren (D. No. 162 at 3); Hay *et al.* (D. No. 171 at 9); Kendrick (D. No. 173 at 3); Wellman (D. No. 174 at 10); and Steitz (D. No. 176 at 6).

has "alternative choices" of complying with federal requirements or declining federal funds); *see also Pennhurst,* 451 U.S. at 30, n. 23, 101 S.Ct. at 1546, n. 23.[3]

Kentucky does not presently receive JJDPA funds, but the Commonwealth has appealed its suspension from the program and it maintains its hope of receiving future funds. Defendants thus cannot establish at this time that Kentucky has chosen to "withdraw and terminate its duties" under the JJDPA. A prospective injunction may still be appropriate, and dismissal would be improper, where there is evidence that "the program or activity in issue ... in the future will likely receive[ ] federal funding." *See Greater Los Angeles Council on Deafness v. Zolin,* 812 F.2d 1103, 1111 (9th Cir.1987). The Court agrees with Plaintiffs, however, that dismissal may well be required in the future if Defendants forswear JJDPA funds and terminate Kentucky's participation in the JJDPA grant program. *See* Pls.' Resp. to Def. Taylor's Mot. to Dismiss at 4; *see also Hendrickson v. Griggs,* 856 F.2d 1041, 1045 (8th Cir.1988) (District Court's injunction requiring State to comply with JJDPA cannot deprive State of power to terminate its participation in program).

### III. STANDING OF PLAINTIFFS

Defendants attack Plaintiffs' standing to press their Section 1983 claims on a variety of grounds. Several Defendants contend that Plaintiffs have not suffered cognizable injuries as a result of Defendants' acts.[4] Defendant Wellman notes that Plaintiff Frankie James is now an adult, and Defendant asserts that James' new status renders her cause of action moot and eliminates her right

to act as class representative.[5] Defendant Taylor observes that former Plaintiff and class representative Jesse James was deceased at the time the Court certified this litigation as a class action, and argues that Plaintiffs' failure to substitute a new representative pursuant to Fed.R.Civ.P. 25(a)(1) requires dismissal of the charges against Taylor.[6]

■ Plaintiffs may serve as class representatives only if they can show, at minimum, that they face a "real and immediate" threat of injury and that they are members of the class they seek to represent at the time the class action is certified. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). Plaintiffs currently satisfy this standard. This Court must accept as true the allegations of Plaintiffs' Complaint when evaluating a Motion to dismiss, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and Plaintiffs have asserted sufficient facts to fulfill the threat-of-injury and class-membership requirements of standing.

■ Nor does the fact that Plaintiff Frankie James has reached the age of majority necessarily affect her legal ability to represent the class of juveniles. A class action "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs", provided the controversy "remains very much alive for the class of persons [James] has been certified to represent." *Sosna,* 419 U.S. at 401, 95 S.Ct. at 558; *see also Ahmed v. University of Toledo,* 822 F.2d 26, 27 (6th Cir.1987). Frankie James possessed a "case or controversy" at the time the Complaint was filed, and main-

---

**3.** Justice White's dissent in *Pennhurst* argued that a federal court's power to command a State to comply with conditions attached to federal funds "must take account of the State's privilege to withdraw and terminate its duties under federal law." *Pennhurst,* 451 U.S. at 53, 101 S.Ct. at 1558 (White, J., dissenting). A court may order state officials prospectively to perform their duties incident to the receipt of federal funds, Justice White acknowledged, but "the prospective force of such injunctions cannot survive the State's decision to terminate its participation in the program." *Id.* at 53–54, 101 S.Ct. at 1558. The majority in *Pennhurst* agreed with the substance of Justice White's analysis, but contended that his discussion did not apply under the par-

ticular circumstances presented in that case. *Id.* at 30, n. 23, 101 S.Ct. at 1546, n. 23.

**4.** *See* Motions to Dismiss of Defendants Wellman (D. No. 174 at 12) (all Plaintiffs lack standing); Kendrick (D. No. 159 at 3–6) (Plaintiff Starr lacks standing); and Steitz (D. No. 176 at 4–5) (Plaintiffs Younger and Barker lack standing).

**5.** *See* Motion to Dismiss of Defendant Wellman (D. No. 174 at 11, 13).

**6.** *See* Motion to Dismiss of Defendant Taylor (D. No. 162 at 1–2).

tained that position at the time this Court certified the lawsuit as a class action; under such circumstances, a "live controversy" may continue to exist "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Sosna,* 419 U.S. at 402, 95 S.Ct. at 559. It furthermore does not appear that Frankie James' adulthood will create a conflict between her interests and those of the class she represents, or prevent her from competently urging the class's interests at each stage of the proceeding, such that she could no longer "fairly and adequately protect the interests of the class." *Id.* at 403, 95 S.Ct. at 559; Fed.R.Civ.P. 23(a)(4).

The death of Jesse James prior to class certification presents a more troublesome issue. This Court originally designated Jesse James as a class representative in its 1991 Order certifying this litigation as a class action. (Order of May 20, 1991 (Simpson, J.), ¶ 1.) Jesse James in fact had been dead for over a year when the Court approved his request to act as class representative. (Mot. to Dismiss of Def. Taylor, D. No. 162, at 1.) [7] Plaintiffs deleted Jesse James from the list of class representatives, and substituted the name of B.F. Nelson, when Plaintiffs filed their Amended Complaint in January, 1993. That revised Complaint was introduced in response to this Court's Order granting Plaintiffs leave to "make amendments to the Complaint, which amendments shall include all final Plaintiffs or Defendants." (Order of Dec. 4, 1992, at ¶ 14.) No party filed a formal "statement of the fact of death" to notify the Court and other litigants of Jesse James' demise, and Plaintiffs did not file a motion for substitution. Fed.R.Civ.P. 25(a)(1).[8]

■ This Court does not lightly sanction departures from the Rules of Civil Proce-

dure. Plaintiffs should have formally told the Court and other parties of Jesse James' death, and Plaintiffs should have filed an official motion to substitute Plaintiff Nelson as class representative in place of Jesse James. Nevertheless, the Court does not believe that Plaintiffs' variance from standard procedure warrants dismissal of all or any part of Plaintiffs' cause of action. It may be conceded that Jesse James, in retrospect, was not an appropriate class representative when the class was originally certified. Fed.R.Civ.P. 23(a)(4). But this Court's class action certification granted a legal status to all persons represented by Jesse James which exists separate from Jesse James' personal interest, and which remains alive despite the named representative's death. *Sosna,* 419 U.S. at 399, 401, 95 S.Ct. at 557, 558. Certification of a class action furthermore remains subject to revision at any time prior to achievement of a decision on the merits. Fed.R.Civ.P. 23(c)(1). This Court's Order permitting the designation of new plaintiffs by amended Complaint effectively altered the original class certification and approved Plaintiff Nelson's insertion as class representative. Federal courts, in the interests of justice and judicial economy, may permit the introduction of new class representatives by way of amended Complaint. *See Johnson v. American Credit Co.,* 581 F.2d 526, 533, n. 13 (5th Cir.1978). Plaintiff Nelson's replacement of Jesse James as class representative proceeded in a somewhat unorthodox fashion, but the Court cannot identify any prejudice suffered by Defendants as a result of Plaintiff Nelson's introduction, and the Court will not dismiss the Complaint because of Jesse James' death.

## IV. APPROPRIATE PARTIES DEFENDANT

Various Defendants seek dismissal of the charges against them on the strength of two

---

7. Defendant Taylor does not argue, nor does the record suggest, that Plaintiffs' counsel had knowledge of this fact at the time the class was certified.

8. Plaintiff Jesse James' death became known to the Court informally during a pretrial conference in late 1991. (Mot. to Dismiss of Def. Taylor, D. No. 162 at 1.) Defendant Taylor's Motion to dismiss, though a formal pleading, does not satis-

fy Rule 25(a)(1)'s "formal statement" requirement. *See United States v. Miller Constr. Co.,* 505 F.2d 1031, 1033–35 (10th Cir.1974) (creditor's motion to dismiss not a "formal statement") *and Henkel v. Stratton,* 612 F.Supp. 190, 191, n. 1 (N.D.Ohio 1985) (defendant's brief in support of motion for summary judgment not a "formal statement").

complementary arguments: first, that relief for Plaintiffs mandates joinder of Kentucky's state court judges as defendants in this action, *see* Fed.R.Civ.P. 12(b)(7); and second, that liability for violations of the JJDPA rests exclusively on the shoulders of parties other than themselves, *see* F.R.C.P. 12(b)(6).[9]

### A. *Whether Kentucky State Judges are Necessary or Indispensable Parties:*

█ A person should be joined in a lawsuit if: (1) that person's absence will prevent the assurance of complete relief among those who are already parties, or (2) disposition without that person will subject existing parties to inconsistent legal obligations. F.R.C.P. 19(a). Defendants insist that vindication of Plaintiffs' rights under the JJDPA will require an injunction against Kentucky's district judges, who alone may determine whether a juvenile must be confined. (*See, e.g.*, Mot. of Defs. Hay *et al.*, D. No. 171, at 12.) Defendants add that they have the right to depend upon the validity of actions taken by Kentucky's judges, and indeed have little choice but to comply with state court orders of confinement. (*See* Mot. of Def. Steitz, D. No. 176, at 11.)

Rule 19 encourages a "pragmatic approach" to joinder: even though a party's absence might make some forms of relief unavailable, "the entire suit should not be dismissed if meaningful relief can still be accorded." *Local 670 v. International Union, United Rubber, Cork, Linoleum & Plastic Workers*, 822 F.2d 613, 618 (6th Cir.1987). The Sixth Circuit has specifically warned that state judges should not be subjected to the equitable power of the federal courts when an injunction against an existing litigant . could provide the desired remedy. *Lamb Enterprises v. Kiroff*, 549 F.2d 1052, 1060 (6th Cir.1977).

The presence of Kentucky's judges as defendants in this litigation is not necessary to accomplish a fair adjudication of Plaintiffs' charges or to assure substantial injunctive relief in the event Plaintiffs prove successful. It may be that Kentucky's judges are acting in accordance with state law which contradicts the JJDPA, or perhaps are misconstruing the JJDPA; if so, it seems fair to presume that those judges will comply with this Court's interpretation of the federal law's mandates, and that they will do so without the threat of an injunction. *See R.W.T. v. Dalton*, 712 F.2d 1225, 1232–33 (8th Cir. 1983). Plaintiffs' failure to sue Kentucky's judges does not warrant dismissal of this action. *See Hendrickson v. Griggs*, 672 F.Supp. 1126, 1133 (N.D.Iowa 1987) (holding that state judges were not indispensable parties in action arising under JJDPA).

### B. *Whether Defendants May be Held Liable Under Section 1983:*

█ Plaintiffs contend that 42 U.S.C. § 1983 imposes liability upon Defendants in their official capacities for their alleged violations of the JJDPA.[10] A governmental entity may be held responsible in an "official-capacity action" under Section 1983 "only when the entity itself is a moving force behind the deprivation" of federal rights: that is, only when "the entity's policy or custom [has] played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (internal quotations omitted). The law will hold parties liable in their official capacity "only when an injury was inflicted by a government's lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 108 S.Ct. 915, 923, 99

---

**9.** *See* Motions to Dismiss of Defendants Kendrick (D.No. 159); Lewis (D. No. 161); Hay *et al.* (D. No. 171); Steitz (D. No. 176); and Wellman (D. No. 174).

**10.** The Eleventh Amendment does not prohibit Plaintiffs from suing state officers in their official capacity for the purpose of gaining prospective . injunctive relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304,

2311, n. 10, 105 L.Ed.2d 45 (1989); *Wolfel v. Morris*, 972 F.2d 712, 718–19 (6th Cir.1992). The Order accompanying this Memorandum Opinion will therefore deny the Motions of Defendants Lewis and Wellman to the extent those Motions seek dismissal on the basis of Eleventh Amendment immunity. (*See* Mots. to Dismiss of Def. Lewis, D. No. 161, at 11, *and* Def. Wellman, D. No. 191, at 5.)

L.Ed.2d 107 (1988) (internal quotations and citation omitted).[11]

Each Defendant in this litigation claims that the entity he or she represents lacks the power to craft state or local policy which could contradict the JJDPA. Thus, for instance, Defendant Kendrick, who represents a local juvenile detention center, argues that "the federal statute imposes a duty on states, not local governments." (Def. Kendrick's Mot. to Dismiss, D. No. 159, at 7.) Defendant Lewis, who represents the state government's Department of Corrections, responds that jail conditions fall under the "duty and responsibility of the county officials", and that his agency is "not obligate[d] . . . to enforce standards created by the Federal Constitution or laws." (Def. Lewis's Mot. to Dismiss, D. No. 161, at 9–10.) Though Defendants offer divergent theories regarding the proper locus of responsibility for JJDPA violations, they reach a unanimous conclusion: that Plaintiffs cannot state a claim to relief under Section 1983 against any of the defendants named in the Complaint.

Only those officials who possess "final policymaking authority" may subject the government to Section 1983 liability. *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924. State law determines whether the particular defendant-official holds this sort of power. *Id.*

Where policymaking power is shared among two or more officials, the decisions of any of those persons might be attributable to the governmental entity the officials represent. *Id.* at 126, 108 S.Ct. at 925.

■ There is little question at this stage that the state government Defendants—Lewis, who represents Kentucky's Department of Corrections, and Wellman, of the Justice Cabinet—hold final policymaking authority with respect to the confinement of juveniles in Kentucky.[12] The Department of Corrections exercises "all functions of the state" in relation to "management of penal, reform, and correctional institutions." Ky.Rev.Stat. (KRS) 196.030(1)(a). State law specifically requires the Department to "issue and enforce administrative regulations to govern . . . juvenile holding facilities", KRS 441.057, and vests in its Secretary the power to enforce the law and regulations by closing jails or by requiring jails to cease to house certain classes of prisoners. KRS 441.075(2). The Justice Cabinet similarly exercises the authority to "issue and enforce administrative regulations to govern . . . secure juvenile detention facilities". KRS 15A.210. The Cabinet must inspect these facilities annually, KRS 15A.230(1), and may institute legal proceedings to secure compliance with its regulations. KRS 15A.240. The Juvenile Justice

**11.** At least one Circuit Court has declared that an official-capacity action seeking exclusively prospective injunctive relief need not satisfy the threshold "policy or custom" requirement discussed by *Praprotnik* and other Section 1983 cases. *Chaloux v. Killeen*, 886 F.2d 247, 250–51 (9th Cir.1989). The *Chaloux* opinion would require plaintiffs who request such limited relief to establish only that the defendant government officials "by virtue of their offices have some connection with the enforcement of the challenged law." *Id.* at 251.

The Sixth Circuit apparently has not yet addressed this specific issue. In at least two recent cases, however, that court has applied the "policy or custom" analysis to state government defendants from whom the plaintiffs sought *both* compensatory and injunctive relief. *See Adkins v. Board of Ed. of Magoffin County*, 982 F.2d 952, 953, 958–59 (6th Cir.1993) *and Williams v. Ellington*, 936 F.2d 881, 883–85, 889 (6th Cir.1991). *See also Nix v. Norman*, 879 F.2d 429, 432–33 (8th Cir.1989) (plaintiff seeking injunctive relief from state officer in his official capacity must prove existence of unconstitutional policy or custom).

The *Chaloux* opinion offers a thoughtful basis for abandoning the "policy or custom" standard in lawsuits like the one presently before this Court. Absent clear guidance from the Sixth Circuit, however, this Court believes that the traditional (and more demanding) "policy or custom" showing should remain a threshold element in Plaintiffs' cause of action. The Court adopts this position in part because of the danger that officials who possess no more than "some connection with the enforcement of the challenged law" might have little reason to defend that law. The resulting absence of truly opposed parties would effectively require the Court to render an advisory opinion. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982) *and Flast v. Cohen*, 392 U.S. 83, 100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

**12.** Two other state government officials—Governor Jones and Secretary Heller of the Cabinet for Human Resources—are named as Defendants in this action, but do not have motions to dismiss pending before the Court at this time.

and Delinquency Prevention Act, for its part, imposes many of its obligations on state rather than local governments. *See, e.g.* 42 U.S.C. § 5633(a) (the state shall submit a plan for carrying out the JJDPA's purposes); § 5633(c) (failure to achieve compliance terminates state's JJDPA eligibility); *and* 28 C.F.R. § 31.400 (state must certify that the state will comply with the applicable provisions of the JJDPA). Kentucky's JJDPA plan designates the Justice Cabinet as the agency responsible for administering and monitoring the plan. *See* 42 U.S.C. §§ 5633(a)(1) and (15); Amended Complaint, ¶ 34; *and* Def. Corn's (now Wellman's) Mot. for Protective Order, D. No. 130, Ex. D., at 5.

The final policymaking authority of the local Defendants is less certain. The Complaint focuses on two basic types of local government officials: jailers and juvenile detention center managers; and county judge-executives and fiscal courts. The Court will address each entity briefly in turn.

Kentucky law grants each jailer, like Defendant Hay, "the custody, rule, and charge of the jail ... and of all persons in the jail...." KRS 71.020. At least one District Court, interpreting a virtually identical statute, has held that an official with such power may be held liable under Section 1983 for JJDPA violations. *Grenier v. Kennebec County,* 748 F.Supp. 908, 918 (D.Me.1990). Liability may be imposed even though the official is involved only involuntarily in the task of placing juveniles in jail: where a state participates in the JJDPA, the rights conferred by that Act "can be deprived by individuals with no connection to the program." *Hendrickson v. Griggs,* 672 F.Supp. at 1141. It is conceivable, at least at this stage of the litigation, that a jailer in Kentucky might hold the authority to design policy which results in the confinement of juveniles in violation of the JJDPA.

The powers of the directors of juvenile detention centers, such as Defendants Steitz and Kendrick, are not so definitively stated by Kentucky law. The directors clearly must comply with regulations issued by the state Justice Cabinet, KRS 15A.220(1), but this obligation does not necessarily (or even logically) confer "final policymaking authority" on the detention center directors. Plaintiffs assert that the directors, like jailers, are responsible for the welfare of juveniles placed in their charge, and that complete relief cannot be achieved without the ability to restrain the directors' actions. (Pls.' Resp. to Def. Kendrick's Mot. to Dismiss, D. No. 163, at 4.) It does seem reasonable to conclude that a detention facility's director would possess final authority to design certain policies for the detention center, though the scope of such final authority might be quite limited. It is furthermore true that JJDPA regulations require the applicant state to certify that all "subgrantees and contractors will comply with applicable provisions" of the JJDPA. 28 C.F.R. § 31.400. Again, it is at least conceivable that detention facility directors might possess the authority to create policy which could result in the violation of the JJDPA.[13]

Kentucky law expressly entrusts county judge-executives (like Defendant Arnold) and fiscal courts (like Defendants Benassi *et al.*) with certain powers to regulate the detention of juveniles. Fiscal courts may issue regulations to oversee the "confinement, care and rehabilitation of juvenile law offenders," KRS 67.083(3)(e), and must specifically provide for the maintenance of a secure juvenile detention facility. KRS 67.0831(2). The county judge-executive may exercise executive powers granted to local governments, KRS 67.-083(4), and may inspect jails in the county at any reasonable time. KRS 441.045(1).

---

13. Defendant Kendrick contends that Plaintiffs cannot hold him liable either in his personal capacity or under a theory of *respondeat superior,* and he accordingly requests dismissal of the charges against him. (Mot. to Dismiss of Def. Kendrick, D. No. 159, at 7–8.) These arguments, though quite correct in the abstract, have no application in this particular lawsuit. Plaintiffs assert that Defendant Kendrick is liable in his *official* capacity, not in his personal capacity.

Plaintiffs do not seek to establish—and the law does not permit Plaintiffs to claim—that Defendant Kendrick is liable on grounds of *respondeat superior;* Plaintiffs instead allege (and must prove) that Defendant possessed and exercised policymaking authority in such a manner as to deprive Plaintiffs of their federal rights. Defendant Kendrick's Motion shall therefore be denied.

The JJDPA, for its part, focuses extensively on the participation and obligations of local governments in the Act's programs. Congress included among its fundamental objectives the desire to encourage "legislative action at the Federal, State, and local level" to facilitate the adoption of national juvenile justice standards. 42 U.S.C. § 5602(a)(5). Congress also hoped "to assist State and local governments in removing juveniles from jails and lockups for adults." § 5602(a)(8). Toward these ends, a state's JJPDA plan must provide for "active consultation with and participation of units of local government" in the development of the state plan. § 5633(a)(4). The state plan must further provide that two-thirds of all JJDPA funds awarded to the state will be expended through programs of local government units. § 5633(a)(5)(A). The JJDPA requires the local government's chief executive, such as County Judge–Executive Arnold, to "assign responsibility for the preparation and administration of the local government's part of a State plan ... to that agency within the local government[ ] ... which can most effectively carry out the purposes" of the JJDPA plan. § 5633(a)(6).

There is little consensus, however, regarding the Section 1983 liability of local government officials for JJDPA violations. *Compare Grenier*, 748 F.Supp. at 918–19 (county commissioners may be liable) *with Hendrickson*, 672 F.Supp. at 1142–43 (county board of supervisors cannot be liable). Nevertheless, the Court is satisfied that Kentucky law entrusts its local governments with power sufficient to make final policy with respect to the detention of juveniles within their spheres of authority.

The Court cannot yet determine conclusively whether any of these Defendants has *in fact* created a policy whose terms compelled a violation of the JJDPA or which displays an "affirmative link" to the alleged JJDPA violations. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). After a court identifies those officials who possess the power to make policy on a particular issue, there remains a question of fact as to whether those persons' decisions caused the deprivation of rights at issue, either by creating policies which affirmatively command such violations or by acquiescing in a long-standing practice or custom which constitutes the "standard operating procedure" of the governmental entity. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). Construing the allegations of Plaintiffs' Complaint favorable to Plaintiffs, as this Court must, *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686, it can be said at this stage that Plaintiffs have asserted facts sufficient to support a determination that the policies of the various Defendants were the "moving force" behind the JJDPA violations alleged. Nevertheless, this litigation should not long continue without a more detailed showing that each Defendant can be held liable in his or her official capacity for intrusions on Plaintiffs' JJDPA rights. The accompanying Memorandum and Order for Status Conference sets forth a schedule by which the parties may ultimately address this issue by motions for summary judgment.

## V. OTHER BASES FOR DISMISSAL

**Plaintiffs' Eighth Amendment Claims:** Defendant Kendrick argues that the confinement of status offenders in a secure detention facility alongside juveniles accused of more serious offenses does not constitute cruel and unusual punishment under the Eighth Amendment. (Mot. to Dismiss of Def. Kendrick, D. No. 159, at 9–10.) Defendant's analysis is not without merit, but it provides him little assistance, because Plaintiffs do not assert an Eighth Amendment claim against him. (Amended Complaint ¶¶ 88–89; Pls.' Resp. to Def. Kendrick's Mot. to Dismiss, D. No. 163, at 3.) Those Defendants against whom Plaintiffs *do* advance an Eighth Amendment cause of action have not yet sought dismissal of this constitutional claim.[14] Plaintiffs' Eighth Amendment claim

14. Plaintiffs allege that two groups of Defendants have violated the Eighth Amendment: (1) those representing Franklin County (Hay, Arnold, Benassi, Dawson, Demerson, Luttrell, Robinson, and Smithers), and (2) those representing Da-viess County (Taylor, Norris, Boswell, Marksberry, and Warren). Plaintiffs add Eighth Amendment claims against Defendants Jones and Lewis. *See* Amended Complaint, ¶¶ 90–91, 94–95.

is sufficiently distinct from their JJDPA causes of action to justify expedited consideration of this part of Plaintiffs' Complaint. The accompanying Memorandum and Order for Status Conference sets forth a schedule by which the appropriate Defendants may ultimately submit consolidated motions for summary judgment on Plaintiffs' constitutional cause of action.

**Res Judicata Effect of *Sowders v. Atkins*:** Several Defendants claim that a class action suit litigated in Kentucky state courts, *Sowders v. Atkins*, 646 S.W.2d 344 (Ky.1983), bars this lawsuit under the principles of res judicata.[15] This Court discussed at length the applicability of res judicata to this action in a previous Memorandum, and concluded that "there is nothing in [the *Sowders* ] opinion which precludes this § 1983 action." (Mem.Op. of May 20, 1991 (Simpson, J.) at 14–16.) Defendants have not convinced this Court that it should revise its earlier decision, and Defendants' Motions shall accordingly be denied.

## VI. CONCLUSION

A review of the parties' submissions in this lawsuit suggests to the Court that two issues deserve expedited discussion and resolution: (1) Plaintiffs' Eighth Amendment claims and (2) the existence of policies created by Defendants which constituted "moving forces" behind the alleged violations of the JJDPA.

The Court believes, however, that a period of consultation and mediation among the parties might be more efficient and appropriate at this time, rather than proceeding directly to further briefing. The Court's Memorandum and Order for Status Conference sets forth a procedure for establishing such consultation and mediation.

The Court will also require the parties to consolidate their Motions and other pleadings to the greatest extent possible, pursuant to this Court's power to "prescrib[e] measures to prevent undue repetition or complication in the presentation of . . . argument". Fed. R.Civ.P. 23(d)(1). As one might surmise from the preceding Memorandum, a large number of the pleadings and responses in this case have been cumulative: though each has been well-presented, many have added little to the information and analysis already available to the Court from a previously-submitted document. This case can proceed at less expense and with more dispatch if the parties consolidate their pleadings and responses to the greatest extent possible.

The Court is entering an Order and a companion Memorandum and Order for Status Conference both of which are consistent with the conclusions herein.

## MEMORANDUM AND ORDER FOR STATUS CONFERENCE

By its Memorandum Opinion and Order of this same date the Court has ruled on various pending motions relating to subject matter jurisdiction, the standing of Plaintiffs, the appropriateness of various party defendants, the indispensability of other potential defendants, Plaintiffs' Eighth Amendment claims and the *res judicata* effect of *Sowders v. Atkins*.

While reviewing those pending motions, the Court determined that it must next consider Plaintiffs' causes of action pursuant to the Eighth Amendment and Plaintiffs' allegations of JJDPA violations which require the existence of a policy or custom which may be the "moving force" behind the violations. It would be necessary to establish a briefing schedule as to those issues prior to further consideration by the Court.

The Court has concluded, however, that it would be beneficial for all concerned that the Court direct a period of discussion and mediation among all the parties prior to all the parties taking the time and expense to address additional legal issues. Wherefore, in view of these conclusions and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Court will hold a status conference in this case on May 25, 1993, at 2:00 P.M. (EST) in Louisville. Any party may participate by telephone by notifying Barbara Cravens

---

**15.** *See* Motions to Dismiss of Defendants Kendrick (D. No. 159 at 10) and Hay *et al.* (D. No. 171 at 10).

208

(502–582–5156). At that status conference the Court will propose a period of discussion and mediation among the parties to be conducted by an outside independent mediator chosen by the Court. Each counsel is expected to participate in the status conference after having previously discussed with their clients (1) their reasonable litigation objectives; and (2) the extent of their flexibility in achieving those objectives, which could lead to resolution of this litigation. The Court expects that the period of mediation and consultation directed by the outside independent mediator shall extend no longer than two months.

If a period of mediation and consultation is not agreed to by the parties or if that period of mediation and consultation does not result in progress towards resolution of this case, the Court will order that the parties submit motions for summary judgment in the following manner:

(1) Those Defendants against whom Plaintiffs assert a cause of action arising under the Eighth Amendment shall present a Motion for Summary Judgment seeking dismissal of those claims within thirty (30) days of notice by the Court. Plaintiffs shall have thirty (30) days thereafter to respond, and Defendants shall have fifteen (15) days to reply, at which time Defendants' Motion shall be deemed submitted. The parties shall present consolidated pleadings as described in this Court's Memorandum Opinion and Order, unless for good cause shown the parties cannot consolidate their pleadings.

(2) During this same thirty (30) day time period all Defendants shall prepare consolidated Motions for Summary Judgment with respect to the existence of a policy or custom which was the "moving force" behind the violations of the JJDPA alleged by Plaintiffs. Plaintiffs shall then have thirty (30) days to file a single Response to the Motions listed above. Defendants may file Replies, consolidated as described above, fifteen (15) days thereafter.

