**John A. EMISON, and Tennessee Conservative Union Victory Fund, Plaintiffs,**

v.

**Peggy CATALANO, Executive Director of the Tennessee Registry of Election Finance, Defendant.**

No. 3:95–cv–0617.

United States District Court, E.D. Tennessee.

Jan. 12, 1996.

Frederic S. LeClercq, Knoxville, TN, for Plaintiffs.

Charles W. Burson, and Janet M. Kleinfelter, Office of the Attorney General and Reporter, Nashville, TN, and Robert E. Cooper, Jr., Bass, Berry & Sims, Nashville, TN, for Defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is a constitutional challenge to the Tennessee Campaign Contribution Limits Act of 1995, 1995 Tenn.Pub.Acts, ch. 531. A review of the provisions of the act helps to clarify the issues presented.

The act resulted from House Bill No. 89, substituted for Senate Bill No. 79, and became effective, for the purposes of this civil action, on January 1, 1996. The act enacts Tennessee Code Annotated § 2–10–302, which imposes limits on contributions to any candidate's campaign by any person, multicandidate political campaign committee (*i.e.*, a political action committee, or PAC), or candidate. Limits in dollar amounts applicable to individual persons, multicandidate political campaign committees, and candidates are stated in § 2–10–302(a) through (c). Section 2–10–302(d) imposes limits on the amounts of money which candidates may accept from all contributing multicandidate political campaign committees, of 50% of the total contributions made to a candidate for an office filled by statewide election, and $75,000.00 for a candidate for any other state or local public office.

The court notes that in the act's severability section, which is § 16 of the act, it is provided that if T.C.A. § 2–10–302(c)(1), which imposes a contribution limit of $250,000.00 on a candidate for an office elected by statewide election with respect to contributions of his or her own funds, or T.C.A. § 2–10–302(d)(1), which imposes the aggregate limit on contributions from multicandidate political campaign committees to a candidate for an office elected by statewide election, is held invalid to any extent or in any application to any person or circumstance, then the entire paragraph shall be invalid and void.

Section 2–10–306 imposes absolute per-candidate contribution limits on all political campaign committees controlled by a political party on the national, state, or local level, or controlled by a caucus of such party established by members of either house of the Tennessee General Assembly. Political campaign committees controlled by a political party or by a caucus of such party are treated as a single committee for the purpose of this provision.

The penalty for violating these contribution limits is stated in § 2–10–308(a), which permits the Registry of Election Finance to impose a civil penalty of the greater of $10,000.00 or 115% of the amount of contributions made or accepted in excess of the statutory limitations. The words "made or accepted" indicate that a civil penalty may be imposed on a contributing person, multicandidate political campaign committee, or candidate as well as on the candidate (or organization acting on behalf of a candidate) who accepts an excessive contribution or contributions. Thirty days after a civil penalty imposed on a candidate becomes final, "the candidate shall be ineligible to qualify for election to any state or local public office until such penalty is paid." T.C.A. § 2–10–308(d).

In T.C.A. § 2–10–301(b), the Registry of Election Finance is granted jurisdiction to administer and enforce generally the provisions of part 3 of Title 2, ch. 10, of T.C.A., which is the bulk of the Campaign Contribution Limits Act, enacted by § 1 of the act.

Section 2–10–309 enacted by the Campaign Contribution Limits Act incorporates federal election law for the purpose of "determining issues arising in regard to this act." Section 2–10–310 is central to the controversy in this civil action, and so subsections (a) and (b) of this code section bear quotation in full:

(a) From the convening of the General Assembly's Regular Annual Session each year to the earlier of May 15 or the conclusion of the Annual Legislative Session, a member or a candidate for the General Assembly or a member's or a candidate's campaign committee shall not conduct a fundraiser or solicit or accept contributions for the benefit of the caucus, any caucus member or candidate for the General Assembly or Governor.

(b) From the convening of the General Assembly's regular annual session each year to the earlier of May 15 or the conclusion of the Annual Legislative Session, a political campaign committee controlled by a political party on the national, state, or local level or by a caucus of such political party established by members of either house of the General Assembly, which makes contributions to a candidate for the General Assembly or Governor for election or to defray the expenses of such person's office shall not conduct a fundraiser, solicit or accept, contributions for the benefit of the caucus, any caucus member or candidate for the General Assembly or Governor.

The plaintiffs refer to these as "black-out" provisions. It can be seen that subsection (a) prevents a candidate for a seat in the General Assembly, whether an incumbent or nonincumbent, from soliciting or accepting campaign contributions during the period of time from the beginning of the regular legislative session (which occurred early in January this year) to the earlier of the end of the session or May 15.

The black-out is complemented in section 8 of the act, which adds a new subsection to T.C.A. § 3–6–108 which prohibits lobbyists, employers of lobbyists, and multicandidate political campaign committees controlled by lobbyists or employers of lobbyists from making contributions to candidates for the Office of Governor or members of the General Assembly or of the Public Service Commission while the General Assembly is in a regular annual legislative session.

Section 10 of the act creates a new code section which provides,

No multicandidate political campaign committee other than a committee controlled by a political party on the national, state, or local level or by a caucus of such political party established by members of either house of the General Assembly shall make a contribution to any candidate in a period from ten (10) days before an election until the day of the election.

It will be seen that this bars a multicandidate political campaign committee not controlled by a political party or by a caucus of a political party from contributing to a political candidate during the last 10 days of his or her campaign.

In count I of the complaint, the plaintiffs challenge § 2–10–310(a), the provision enacted by the act which prohibits a member of the General Assembly or a candidate for a seat in the General Assembly from raising, soliciting, or accepting contributions during the period from the convening of the regular annual session of the General Assembly to the earlier of the end of the session or May 15. Mr. Emison challenges this provision as applied to him, a nonincumbent candidate for the Republican nomination for a seat in the Tennessee Senate, on the grounds that it violates constitutional rights of exercise of voting rights, association, and free speech.[1] The plaintiff Tennessee Conservative Union Victory Fund (the Fund) challenges the provision on the same grounds, as applied to contributions which it might make to nonincumbent candidates. In the plaintiffs' brief [doc. 3] filed in support of their motion for injunctive and declaratory relief, however, the plaintiff Fund states an intention to contribute to both incumbent and nonincumbent candidates.

In count II of the complaint, there is a challenge to § 8 of the act, the provision which amends T.C.A. § 3–6–108 to bar lobbyists from contributing to political campaigns while the General Assembly is in a regular annual legislative session. Neither plaintiff states in the complaint that it is a lobbyist or the employer of one, or is controlled by a lobbyist or the employer of one. The language used in this section of the act prohibits a lobbyist contribution "to a candidate for the Office of Governor, *member* of the General Assembly or Public Service Commission." (Emphasis added.) As is stated above, the plaintiff Mr. Emison is a nonincumbent seeking nomination as a candidate for a seat in the legislature.

---

1. The First Amendment to the United States Constitution applies to the States through the Fourteenth Amendment. *Murdock v. Commonwealth* *of Pennsylvania,* 319 U.S. 105, 108, 63 S.Ct. 870, 872, 87 L.Ed. 1292 (1943).

In count III of the complaint, the plaintiff Fund does not attack any specific provision of the act, but pleads generally its First and Fourteenth Amendment right to solicit contributions and to make expenditures for the election or defeat of candidates "independently of the political campaigns of such candidates, in whatever amounts it wishes." In so pleading, the plaintiff Fund no doubt refers to the constitutional distinction between campaign contributions and expenditures drawn in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

In count IV, the Fund attacks T.C.A. § 2–10–302(d) enacted by the act, the provision which imposes aggregate limits on the amount of money which a candidate may accept from multicandidate political campaign committees. The Fund pleads that this violates constitutional guarantees of voting rights, association, and free speech, as well as the guarantee of equal protection, in that the statutory provision prevents the Fund from contributing to any candidate of its choice who has already reached the applicable statutory limit on contributions from multicandidate political campaign committees.

In count V, the plaintiff Fund challenges on First Amendment and equal protection grounds § 10 of the act, the provision which prohibits a multicandidate political campaign committee other than such a committee controlled by a political party from contributing to a candidate's campaign during the last 10 days of the campaign.

In count VI, the plaintiffs do not state a constitutional claim, but the plaintiff Fund asks instead for a declaratory judgment that T.C.A. § 2–10–306, the provision which imposes limits on contributions "made by political campaign committees controlled by a political party on the national, state, or local level or by a caucus of such political party established by members of either house of the General Assembly" does not apply to it.

The plaintiffs ask generally for declaratory and injunctive relief.

As soon as they filed their complaint, the plaintiffs moved for injunctive and declaratory relief [doc. 2; supporting brief, doc. 3].

The originally named defendant, the Tennessee Registry of Election Finance, then moved to dismiss the civil action [doc. 4; supporting brief, doc. 5] for failure to state a claim on which relief can be granted, arguing that there was no case or controversy ripe for adjudication, that this court is required by considerations of federalism to abstain from ruling on the issues presented, that the defendant registry is not a person susceptible to suit under 42 U.S.C. § 1983, and that the proper venue for this civil action is the Middle District of Tennessee.

In accordance with Fed.R.Civ.P. 15(a), no responsive pleading having been served, the plaintiffs filed their amended complaint [doc. 7], substituting Peggy Catalano, the Executive Director of the Tennessee Registry of Election Finance, as the defendant. At this court's hearing on the motions filed in this civil action, counsel for the plaintiffs represented that this amendment was done to avoid any bar against a suit naming the Registry of Election Finance which might be imposed by the Eleventh Amendment to the United States Constitution, and that the amendment of the complaint was accomplished before the plaintiffs were aware of the objection that the defendant registry could not be sued under 42 U.S.C. § 1983.

After the Attorney General and Reporter of the State of Tennessee filed the defendant's motion to dismiss, he served notice [doc. 8] that he would not defend in this civil action the constitutionality of T.C.A. § 2–10–310(a), the black-out provision, as applied to the plaintiff Mr. Emison. The reason for this decision is apparent from a portion of the argument made in the plaintiffs' brief in support of their motion for injunctive and declaratory relief: before the enactment of the Campaign Contribution Limits Act, the Attorney General issued an opinion in which he stated that the black-out provision, as applied to nonincumbent candidates for political office, likely will not pass constitutional review. Counsel retained by the Speakers of the Tennessee Senate and House of Representatives then appeared [doc. 9] to defend the constitutionality of T.C.A. § 2–10–310(a) as applied to the plaintiff Mr. Emison in this case.

The court heard some evidence and the arguments of counsel at a hearing on the afternoon of Friday, January 5, 1996. In addition to the multiple briefs and affidavits filed before the hearing, the court received at the hearing a brief from counsel retained to defend the constitutionality of the black-out provision, and the court has continued to receive material since the hearing. In this memorandum opinion, the court will address whether the plaintiffs, or either of them, should have injunctive relief with respect to the application of T.C.A. § 2–10–310(a) to nonincumbent candidates for seats in the Tennessee General Assembly.

■ It is first necessary to address in this context the defendant's arguments in support of her motion to dismiss this civil action. That the plaintiffs may seek injunctive relief against the defendant, an officer of the State of Tennessee, to restrain her from threatened enforcement action which would violate the plaintiffs' rights guaranteed by the United States Constitution, without running afoul of the Eleventh Amendment prohibition against an unconsented suit against a State, is well established. *See, e.g., Georgia R.R. & Banking Co. v. Redwine,* 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952), in which the plaintiff corporation sought to restrain the Revenue Commissioner of the State of Georgia from collecting threatened taxes allegedly in violation of the prohibition against impairing the obligation of contracts in Article I, § 10 of the United States Constitution.

■ At the hearing before this court, the Attorney General argued on behalf of the defendant, without any citation to federal authority, that the plaintiffs improperly named the defendant, and that they should have sued instead the directors of the Registry of Election Finance. The Attorney General stated that the defendant Ms. Catalano has the purely administrative duty of enforcing the Campaign Contribution Limits Act, and that she has no responsibility with respect to construing the act.

As the court has stated above, the act provides, in its § 1, that "[t]he registry of election finance shall have the jurisdiction to administer and enforce the provisions" of part 3 of chapter 10 of Title 2, T.C.A. In what is now T.C.A. § 2–10–308(a), the registry is granted authority to impose civil penalties.

The registry is an independent entity of the government of the State of Tennessee composed of members variously appointed by the governor and the two houses of the General Assembly. *See, generally,* the Registry of Election Finance Act of 1989, as amended, T.C.A. §§ 2–10–201 through 2–10–210. The members of the registry are not compensated for their service. T.C.A. § 2–10–203(g).

The executive director is appointed by and serves at the pleasure of the registry, T.C.A. § 2–10–204(a). He or she may be the same person as the coordinator of elections. *Id.* The director and other employees of the registry do not have civil service status in the Tennessee government. T.C.A. § 2–10–204(b).

The Registry of Election Finance Act grants jurisdiction to, imposes duties on, and grants powers to the registry itself, not its executive director. *See* T.C.A. §§ 2–10–205, –206 and –207. Nevertheless, the court does not find in the plaintiffs' naming of Ms. Catalano as the defendant a ground for dismissal of this civil action. The plaintiffs seek prospective injunctive relief, not money damages. There can be no doubt that the day-to-day business of the Registry of Election Finance, both in the administration and in the enforcement of the Campaign Contribution Limits Act, will be conducted by its paid executive director, not by its uncompensated members.

As for the enforceability of any decree which this court might make, the court will not presume that if it enjoins the defendant executive director from enforcing any provision of the act under review against either or both of the plaintiffs, the members of the Registry of Election Finance will ignore the court's ruling. *Compare James v. Jones,* 148 F.R.D. 196, 203 (W.D.Ky.1993) (district court would not dismiss class action against Kentucky officials alleging violation of the federal Juvenile Justice and Delinquency Prevention Act on the ground of failure to join Kentucky's judges having authority to confine juveniles as indispensable parties; "it seems

fair to presume that those judges will comply with this Court's interpretation of the federal law's mandates, and that they will do so without the threat of an injunction").

■ The defendant disclaims any authority to construe the Campaign Contribution Limits Act, but her lack of authority in this regard is irrelevant, because the provisions of the act as applied to one or both of the plaintiffs are either constitutional or unconstitutional on the basis of the statutory language; the court finds no ambiguity in the act on the basis of which an administrative interpretation might render an otherwise unconstitutional provision constitutional. For this reason, whether or not the defendant executive director is or is not a policymaker is irrelevant, and the course of this litigation so far shows that the named defendant, represented by Tennessee's Attorney General and by private counsel, is unlikely to do anything other than defend the Campaign Contribution Limits Act with vigor. *See James v. Jones, supra,* 148 F.R.D. at 204 and n. 11.

In any event, at this stage of this litigation, and with the Attorney General and counsel retained by the Speakers of the Tennessee Senate and House of Representatives present to defend the constitutionality of the act under review, the court would likely err if it declined to grant leave under Fed.R.Civ.P. 15(a) to amend the complaint to name as defendants any persons identified by defending counsel as the proper parties to this civil action. The liberality mandated by Rule 15 in such circumstances as these counsels weightily against dismissing this civil action for the plaintiff's failure to name as defendants other State officers instead of the one named. The court finds the Attorney General's argument in this regard specious, and so will not dismiss this civil action on this ground.

■ Turning to the next ground for dismissal asserted by the Attorney General, it is difficult to perceive any reason why there is not a real case or controversy, ripe for adjudication, between the plaintiffs and the defendant with respect to the application of T.C.A. § 2–10–310(a), the black-out provision, to nonincumbent candidates for seats in the General Assembly. As the Attorney General conceded at the hearing before this court, the Campaign Contribution Limits Act went into effect on January 1, 1996. The General Assembly has begun its regular annual legislative session, and so it is clear from the plain language of the act that the plaintiff Mr. Emison cannot accept any contributions to his campaign at present, and that the plaintiff Fund may not make any contributions to the campaign of any candidate for a seat in the General Assembly at present. The plaintiff Mr. Emison's acceptance of any such contribution at this time would appear to violate T.C.A. §§ 2–10–310(a) and 2–10–307(a), and so subject him to a civil penalty imposed by the Registry of Election Finance under T.C.A. § 2–10–308(a), as well as disqualification under § 2–10–308(d). While it is not clear that the making of a contribution by the plaintiff Fund would violate either of these statutes [2], or subject the plaintiff Fund to either of the penalties to which the plaintiff Mr. Emison might be subject, it is clear that the act creates a situation in which no candidate for a seat in the General Assembly would be willing at present to accept a contribution from the Fund. In this way, the act has an immediate and direct impact on the plaintiff Fund's asserted constitutional rights of political participation, speech, and association.

■ The defendant's reliance on *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), to argue that the plaintiffs' claims are not presently justiciable is perhaps inapposite. *Lake Carriers' Association* concerned the requirement of an "actual controversy" under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), not the case or controversy

2. T.C.A. § 2–10–310(a) imposes a duty on members of the General Assembly, candidates for seats in the General Assembly, and the campaign committees of such members and candidates. Section 2–10–307(a) refers to the acceptance of contributions and the making of expenditures, but not to the making of contributions. "Expenditure" and "contribution" are terms of art in the law of political elections, in light of the constitutional significance of the distinction between the two. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

requirement of the United States Constitution.[3] Yet the test for an actual controversy stated in that opinion—(1) a substantial controversy, (2) between parties having adverse legal interests, (3) of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, *id.* at 506, 92 S.Ct. at 1755 (citation omitted)—characterizes accurately the case before this court, at least with respect to the Campaign Contribution Limits Act's black-out provision. In the case before this court, as in *Lake Carriers' Association,* "compliance is coerced by the threat of enforcement, and the controversy is both immediate and real." *Id.* at 508, 92 S.Ct. at 1756 (citations omitted). In any event, the court finds the presence of a case or controversy here with respect to the application of the act's black-out provision to the plaintiffs, for there are surely before the court opposing parties having "a personal stake in the outcome of the controversy [so] as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) (discussing standing).

■ *Lake Carriers' Association, supra,* is instructive with respect to the issue of abstention under the doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), on which the defendant also relies. The Supreme Court in *Lake Carriers' Association* noted that the *Pullman* doctrine applies only in narrowly limited special circumstances, *id.,* 406 U.S. at 509, 92 S.Ct. at 1756 (citations omitted), that the absence of an immediate threat of prosecution under a challenged State law does not require abstention, *id.,* and that decisions requiring a federal court to abstain from enjoining a pending State prosecution or holding invalid the law under which the prosecution was brought "have little force in the absence of a pending state proceeding." *Id.* The Supreme Court in *Lake Carriers' Association* also noted that the availability of declaratory relief in the

State judicial system "is wholly beside the point." *Id.* at 510, 92 S.Ct. at 1757.

In *Lake Carriers' Association,* the Supreme Court upheld the lower court's decision to abstain on the ground that the federal Environmental Protection Agency was close to promulgating rules applicable to the conduct in question, and that the Michigan law in question provided for taking such rules into account in the construction of the State law. No such situation is presented here, because there is no possible construction of the black-out provision of the Campaign Contribution Limits Act which would render it other than a black-out provision, and the plaintiffs are arguing that the black-out provision as applied to them, at least with respect to campaign contributions to nonincumbent political candidates, is unconstitutional. The defendant has not advised this court of any pending civil action or other proceeding in a Tennessee court which might address in any way these plaintiffs' claims. There is no ground for abstention with respect to ruling on the plaintiffs' challenge to the black-out provision.

■ The defendant is incorrect in asserting that the Eastern District of Tennessee is an improper venue for this civil action. The plaintiff Mr. Emison resides in this district, and seeks the nomination as a candidate for a seat in the Tennessee Senate from a county in this district. The plaintiff Fund no doubt wishes to exercise its claimed constitutional rights statewide, but the unequivocal evidence received at the hearing on the pending motions in this civil action shows that the Fund is headquartered here, and carries on much of its political financing activity here. If the Registry of Election Finance imposed on either plaintiff a civil penalty under the Campaign Contribution Limits Act, the penalty would affect that plaintiff here.

In such circumstances, venue under 28 U.S.C. § 1391(b)(2) is properly laid in this judicial district. *Compare Farmland Dair-*

---

3. "The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227,

239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). This does not mean, however, that a court might not find a case inappropriate for declaratory relief in light of the "actual controversy" requirement, *see* Fed.R.Civ.P. 57, without reaching the constitutional issue.

*ies v. McGuire,* 771 F.Supp. 80 (S.D.N.Y. 1991) (milk producers who challenged New York law which required compensatory payments on sales made in New York of finished milk made from raw milk purchased outside the State, and who made most of their milk sales in New York City and its surrounding metropolitan area, could litigate against the New York Commissioner of Agriculture and Markets in the Southern District of New York, instead of in the Northern District, in which Albany lies). "Although there is scant caselaw interpreting the newly-enacted version of § 1391(b), cases interpreting the old 'where the claim arose' language establish that suits challenging official acts may be brought in the district where the effects of the challenged regulations are felt even though the regulations were enacted elsewhere." *Id.* at 82, n. 3 (citations omitted).[4]

For the reasons stated, the court will deny the defendant's motion to dismiss this civil action, and will proceed to consider whether to enjoin enforcement of the black-out provision of the Tennessee Campaign Contribution Limits Act as it applies to contributions to nonincumbent candidates for seats in the General Assembly.

 The parties do not dispute the applicable analysis for consideration of an application for an injunction:

When examining the appellees' motion for preliminary injunctive relief, the district court was required to balance the following four factors:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Newsom v. Norris,* 888 F.2d 371, 373 (6th Cir.1989) (citation omitted). "[E]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Id.* at 378.

Both sides refer, as they must in this area of the law, to the seminal decision in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Although the Supreme Court in *Buckley v. Valeo* assessed the constitutional validity of a variety of campaign finance reform measures, it did not have before it any measure similar to the black-out provision of T.C.A. § 2–10–310(a). The Supreme Court did, however, speak forthrightly about the fundamental importance of the constitutional rights associated with speaking out in political campaigns, joining with other citizens in support of or in opposition to political issues and candidates, and making contributions and expenditures to support candidates and causes.

 Against this background, this court finds itself constrained to agree with the Supreme Court of Florida in *State v. Dodd,* 561 So.2d 263 (Fla.1990), and with the Attorney General and Reporter of the State of Tennessee in Tenn.Op.Atty.Gen. No. 95–058 (May 24, 1995)[5], that a black-out provision

4. *Leroy v. Great Western United Corporation,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), which the Attorney General cited during the hearing before this court, concerned the former version of 28 U.S.C. § 1391(b). In any event, *Leroy,* which involved a Texas plaintiff's attempt to lay venue in a judicial district in Texas of its civil action against Idaho officials responsible for the enforcement of Idaho corporate takeover law, is clearly distinguishable on its facts.

5. As the attachment to it shows, the Attorney General's Opinion No. 95–058 was based on a draft of a proposed "Campaign Finance Reform Act of 1995," which provided in its § 9 that a member of the General Assembly or a candidate for a seat in the assembly would be limited to a

19–month period during which he or she might solicit or accept campaign contributions or promises or pledges of such contributions, "[p]rovided, however, a member of the general assembly shall not solicit or accept contributions or a promise or a pledge to make a contribution from January 1 of the election year through June 1 of the election year or two (2) days after the conclusion of the regular annual legislative session, which is earlier." The Attorney General, not constrained like a court by considerations of avoiding a statement which is *obiter dictum,* stated plainly in his opinion, "However, we think Section 9 of the legislation, to the extent that it restricts fundraising during General Assembly sessions by candidates for legislative office as

like that in T.C.A. § 2–10–310(a), although inspired by the commendable impulse to eliminate corruption and the appearance of corruption in political life, cannot constitutionally be applied to contributions to nonincumbent candidates for seats in the legislature.

In reaching this conclusion, the court has not ignored the affidavit testimony offered by the defendant [*see, e.g.,* docs. 15 and 16], in which experts in this field, including former Tennessee Attorney General W.J. Michael Cody, point out that contributions to nonincumbent candidates, like contributions to incumbents, can have an effect on the legislative process, and can create the appearance of improper motivations for supporting or opposing proposed legislation, and even of corruption. Individuals and organizations may contribute money to a nonincumbent to punish his or her incumbent opponent for a position taken on certain legislation.

■ However, as the Tennessee Attorney General recognized in his formal opinion, Tenn.Op.Atty.Gen. No. 95–058 at ——, "any legislative restriction on the exercise of First Amendment rights must be justified by a compelling state interest; further, it must represent the least intrusive means to achieve the legislative goal." And as the Florida Supreme Court recognized in *Dodd, supra,* 561 So.2d at 265, black-out provisions like the one challenged here do not provide the least intrusive means of achieving the elimination of political corruption, because they deprive nonincumbents, who are not subject to corrupting *quid pro quo* arrangements in the same way as are sitting legislators, of any means to counterbalance incumbents' advantage of "virtually unlimited access to the press and free publicity merely by virtue of the public forum they are privileged to occupy."

On this latter point, the court finds convincing the oral testimony of witnesses offered by the plaintiffs at the hearing held in this civil action, that a black-out on political fundraising applicable to nonincumbent candidates accentuates the advantage enjoyed by incumbents with respect to name recognition, that such name recognition is essential to political success, and that the effect of this black-out provision would be to compel nonincumbent candidates to rush into fundraising activities at the end of a legislative session, at a time closer to primary elections when they need to devote more time to campaigning instead of to fundraising.

■ The defendant argues that this court cannot hold the black-out provision unconstitutional as applied to nonincumbents without usurping the General Assembly's legislative function, because this will leave T.C.A. § 2–10–310(a) in effect as if the General Assembly had drawn it to be applicable to members of the legislature only, but this argument ignores a fundamental principle of judicial restraint. The issue whether the black-out provision is constitutionally valid as applied to incumbents is not before the court, because there is no plaintiff here with sufficient incentive to advocate the incumbents' position fairly and vigorously. This fact, standing alone, does not deprive this court of its authority to grant relief to plaintiffs whose constitutional rights are infringed by State legislation as applied to them. In this situation, in which the court is holding unconstitutional a State statute as applied to certain persons, as opposed to striking as unconstitutional whole portions of a statute and leaving others remaining, elision is not called for.

The court's decision as stated in this memorandum opinion renders it unnecessary to address the plaintiffs' argument that the black-out provision, as applied to contributions to nonincumbent candidates for seats in the Tennessee legislature, violates the guarantee of equal protection because it discriminates invidiously against a class of persons. The court finds that the plaintiffs have met their burden in this case of justifying a preliminary injunction against enforcement of T.C.A. § 2–10–310(a) as it applies to nonincumbent candidates for seats in the Tennessee General Assembly. The court will accordingly issue such an injunction, and will

well as incumbent members unconstitutionally interferes with the rights of freedom of speech and expression guaranteed by the First Amend-

ment." The reform act finally enacted, 1995 Tenn.Pub.Acts, ch. 531, restricts fundraising by both nonincumbents and incumbents.

724

address the other issues framed by the parties in a subsequent opinion or opinions.